635 A.2d 709

**William G. MILLER, Jr., Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (FISCHBACH & MOORE), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 24, 1993.

Decided Dec. 22, 1993.

590

Susan Paczak, for petitioner.

Anne M. Coholan, for respondent.

Before COLINS and PELLEGRINI, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

William G. Miller, Jr. (Claimant) petitions for review of the March 9, 1993 order of the Workmen's Compensation Appeal Board (Board), affirming the October 18, 1991 decision of the Workmen's Compensation Referee (Referee) to modify Claimant's compensation for Claimant's failure to pursue job referrals in good faith, under Section 413(a) of The Pennsylvania Workmen's Compensation Act (the Act).[1]

The issues before us are 1) whether the Referee erred in determining that a job requiring a car was actually available to Claimant where Claimant testified that he does not drive; 2) whether the Referee erred in concluding that Claimant had

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 772. Under the 1993 amendments, the Act is renamed the "Pennsylvania Worker's Compensation Act" and Referees are renamed "Judges." Because this case was brought before the Referee prior to the effective date of the amendments, however, we will continue to use the former terms.

not pursued job referrals in good faith; and 3) whether the Referee erred in modifying Claimant's benefits based on the highest paying job for which Claimant received notice.[2]

We conclude that Claimant did not pursue referrals to available jobs in good faith. However, because the Referee based the calculation of Claimant's modified benefits on a job which we conclude was not actually available to Claimant, we reverse and remand for a recalculation of Claimant's compensation.

The facts as found by the Referee may be summarized as follows. At the time of his work-related injury on November 21, 1985, Claimant worked for Fishbach & Moore (Employer) as a pipe fitter. Claimant's average weekly wage at the time of his injury was $732.70. Based on this wage, Claimant began receiving workmen's compensation at a weekly rate of $336.00.

On April 11, 1990, Employer filed a Petition for Suspension or Modification of compensation alleging that as of October 19, 1989 Claimant was capable of performing light duty work but had not made a good faith effort to secure available employment.

At hearings before the Referee, Employer presented the deposition testimony of Hirsch Wachs, M.D., a neurologist, who opined that by October, 1989, Claimant was capable of performing light work. Employer also presented the deposition testimony of Paulette Bakos, a job placement specialist, who stated that between December, 1989 and September, 1990, she notified Claimant of about twenty-five jobs within his physical limitations, including a telemarketing position with Pittsburgh East Lawn Care Company (Pittsburgh East); a

---

**2.** Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Sebro)*, 132 Pa.Commonwealth Ct. 288, 572 A.2d 843 (1990).

sales position with Prudential Financial Services (Prudential); and an auto host position at Biondi Lincoln Mercury (Biondi).[3]

Additionally, Employer presented the deposition testimony of representatives of Pittsburgh East, Prudential, and Biondi. Jackie Armstrong, an office manager of Pittsburgh East, stated that Claimant completed a job application but was not considered for the position because of his cocky demeanor. Warren Miller, a sales manager of Prudential, stated that although Claimant attended the initial interview, Prudential did not consider Claimant's application because Claimant refused to take a required background and aptitude test. The sales manager did not recall whether Claimant informed him that he did not have a car, but indicated that a car was essential for the job. The manager explained that a sales representative is an entry level position involving two years of intensive training and that six of the seven sales representatives working for Prudential had post-secondary education, but none had prior work experience. Cynthia L. Theys, a personnel manager of Biondi, stated that Claimant did not apply for the auto host position.

Claimant presented the deposition testimony of John Baron, M.D., Claimant's treating physician since 1987. Dr. Baron opined that Claimant suffers from chronic neck and back strain but was unable to describe the impact that Claimant's condition would have on his ability to perform light work. Claimant, testifying on his own behalf, stated that he applied for all of the available jobs to which he was referred by Ms. Bakos. With respect to the Pittsburgh East job, Claimant testified that after he completed the application, he was informed that there was no telemarketing position available. Claimant also testified that when he called Biondi he was told that Biondi was no longer hiring. Additionally, Claimant stated that he does not drive. Claimant also testified that he is currently enrolled in college preparatory courses at a

3. Ms. Bakos described the auto host position as a public relations job involving the greeting of customers at the automobile dealership and directing them to sales people. R.R. at 67a. The position, according to Ms. Bakos, was part-time from 3:00 to 9:00 p.m., two to three days per week, at a beginning wage rate of $3.90 per hour. (R.R. at 68a.)

community college with the aim of pursuing a degree in psychology or computer sciences.

The Referee accepted the opinion of Dr. Wachs that Claimant was able to return to light work. The Referee also accepted the testimony of Ms. Bakos as to the nature and availability of the job opportunities which she had located for Claimant. The Referee found that each of these jobs was within the physical restrictions imposed by Claimant's injury. The Referee did accept Claimant's testimony that he promptly responded to Employer's jobs referrals. Claimant did not, however, receive any offers of employment. Based on the testimony of Ms. Armstrong, Mr. Warren Miller, and Ms. Theys, the Referee determined that Claimant's applications for these jobs did not evidence a good faith effort to secure employment.

The Referee concluded that Claimant's disability had become partial as of February 12, 1990, the date on which Claimant received notice of the Pittsburgh East job. The Referee found that Claimant had received notice of the "best" job, the sales position with Prudential, on March 14, 1990. The Referee found that the wage for the Prudential job was at least $500.00 per week. Therefore, the Referee modified Claimant's compensation rate, effective March 14, 1990, to $155.13 per week based on a compensable weekly wage of $232.70.

The Board affirmed the decision of the Referee. The Board found that substantial evidence supports the Referee's findings of fact and that based on those findings of fact, the Referee did not err in concluding that Claimant had failed to make a good faith effort to apply for the available positions.

On appeal to this court, Claimant argues that Employer did not meet its burden of proving the availability of the Prudential sales position pursuant to *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction, Inc.)*, 516 Pa. 240, 532 A.2d 374 (1987). Under *Kachinski*, Claimant argues that job availability relates not only to Claimant's physical limitations, but also to his level of education, his previous

employment experience, and other relevant considerations. Claimant contends that he was not qualified for the Prudential job because he lacks a post-secondary education, prior employment experience in sales or finance, and a car.

Claimant also argues that the Referee erred in finding that Claimant did not make a good faith effort to return to the work force. With respect to the position with Prudential, Claimant argues that his failure to take the required tests does not reflect a lack of good faith because the Prudential representative, Warren Miller, testified that he would have discontinued the interviewing process had he been aware that Claimant did not have a car. Additionally, Claimant argues that the personality conflict which arose between Claimant and Ms. Armstrong of Pittsburgh East does not necessarily reflect a lack of good faith. Further, Claimant contends that he was informed that the auto host position at Biondi Lincoln Mercury had been filled.

In the alternative, Claimant argues that the Board erred in affirming the Referee's modification of compensation based on estimated wages for the Prudential job. Claimant argues that the modification should be based on the wages for the Pittsburgh East position, the first job for which Claimant received a referral. *Roadway Express, Inc. v. Workmen's Compensation Appeal Board (Allen)*, 152 Pa.Commonwealth Ct. 318, 618 A.2d 1224 (1992). Further, Claimant contends that insufficient evidence supports a finding that the average weekly wage for the Prudential position was $500.00.

## Job Availability

■ In *Kachinski*, the Supreme Court established a four-part test to determine whether a claimant's compensation may be modified based on the availability of work within the claimant's capabilities:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, *e.g.* light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

*Kachinski,* 516 Pa. at 252, 532 A.2d at 380.

A position is actually available to a claimant, if the claimant is capable of performing the job, considering not only his physical limitations but also his age, his intellectual capacity, his education, his previous work experience, and other relevant factors. *Id.* It is up to the Referee to determine whether a claimant can perform a particular job. *Id.* The decision of the Referee is reviewable as a finding of fact. *Id.*

In the case at bar, the Referee found, and Claimant does not dispute, that the *physical* requirements of the jobs in question were within the limitations imposed upon Claimant by his injury. With respect to the Pittsburgh East and Biondi positions, Claimant asserted only that he had been informed that neither was available at the time of his application. The Referee, however, accepted the testimony of Ms. Bakos and the employers' representatives that both positions were open. Therefore, we conclude that substantial evidence in the record supports the Referee's finding that the Pittsburgh East and Biondi positions were actually available to Claimant.

We turn, therefore, to Claimant's contention that his lack of post-secondary education, lack of sales experience, and lack of transportation, preclude a finding that the Prudential sales position was actually available to him. Reviewing the record as a whole, we can not conclude that substantial evidence supports the Referee's determination that the Prudential position was actually available to Claimant.

With respect to Claimant's educational level, the Referee found:

Although there is some question as to the Claimant's education qualifications for this job, a college degree is not required and the Claimant's current enrollment in a community college program and his interest in becoming a clinical psychiatrist demonstrate his intellectual confidence.

(R.R. at 293A.) We find that the Referee reasonably inferred from Claimant's enrollment in college preparatory courses that he possesses the intellectual capacity necessary to perform the duties of a sales representative. Additionally, Prudential manager Warren Miller's testimony supports the Referee's conclusion that Claimant's level of education and lack of prior experience did not disqualify him from consideration for the sales position with Prudential.

However, the manager unequivocally testified that a sales representative must have a car to make sales calls.[4] Claimant testified that he does not drive. This Court has previously held that a job requiring a valid driver's license is not actually available to a claimant who does not have one. *Lang v. Workmen's Compensation Appeal Board (Deitch Company)*, 90 Pa.Commonwealth Ct. 544, 496 A.2d 107 (1985), *petition for allowance of appeal granted*, 515 Pa. 588, 527 A.2d 548 (1987). Therefore, under the present state of the law, we conclude that Employer failed to meet its burden of proving that the Prudential position, requiring a car, was actually available to Claimant, who testified that he does not drive.

**4.** Referring to the sales representative position, Claimant's counsel asked Warren Miller:

Q. Now, the way I understand the job, this also involves making sales calls to businesses or individuals?
A. Sure.
Q. Is a car required for that?
A. Unless you want to walk.
Q. The car has to be provided by the individual?
A. That's correct. Prudential does not reimburse people for car allowance or give people cars. They are considered employed by Prudential, but self-employed. You can write that off on your taxes.
Q. Do you remember whether or not Mr. Miller indicated to you at his initial interview whether or not he had an automobile?
A. I don't recall. But if he did not, I would have advised him not to even continue the conversation.
(R.R. at 234a–235a.)

## Good Faith

■  Finding that Employer proved the availability of the Pittsburgh East and Biondi jobs, we proceed to the issue of whether Claimant met his burden of showing that he made a good faith effort to follow through on those job referrals. The Referee accepted the testimony of Ms. Armstrong and Ms. Theys relating to Claimant's efforts to secure employment with Pittsburgh East and Biondi, respectively. We conclude that the Referee did not err in holding that Claimant's failure to apply for the Biondi position and his offensive manner in applying for the Pittsburgh East position show, as a matter of law, that Claimant did not make a good faith effort to secure those positions.

## Modification of Compensation

We have previously held that "[w]here a claimant has not pursued job referrals in good faith, a modification is effective on the date the first referral, which fits into the category for which claimant has been given medical clearance, is available." *Roadway*, 152 Pa.Commonwealth Ct. at 322, 618 A.2d at 1226. Further, where two jobs, which claimant has not pursued in good faith, are available on the same date, we have ordered the modification of benefits based on the wages for the job generally representative of the type of positions for which the claimant received referrals. *Associated Plumbing v. Workmen's Compensation Appeal Board (Hartzog, Jr.)*, 126 Pa.Commonwealth Ct. 618, 560 A.2d 865 (1989).

■  The Referee's findings indicate that Claimant received notice of the Pittsburgh East job on February 12, 1990 and the Biondi job on July 3, 1990. Following *Roadway*, we conclude that the Referee properly modified Claimant's benefits effective February 12, 1990, the date of the Pittsburgh East job referral. However, because we conclude that Employer did not prove the availability of the Prudential sales position, the Referee erred in basing the modification of

Claimant's benefits on the wage rate of the Prudential job.[5] Following *Roadway* and *Associated Plumbing*, we direct the Referee to calculate the appropriate modification of Claimant's compensation rate based on the wage rate of the Pittsburgh East job, a job generally representative of the type of positions for which Claimant received referrals.

We affirm the Board's determination that benefits should be modified, but reverse the determination as to the amount of modified benefits. The matter is remanded for recalculation of the same in accordance with this opinion.

## ORDER

AND NOW, this 22nd day of December, 1993, we affirm the Board's determination that benefits should be modified, but reverse the determination as to the amount of modified benefits. The matter is remanded for recalculation of the same in accordance with this opinion.

Jurisdiction relinquished.

---

5. For the same reason, we do not discuss whether there was substantial evidence in the record to support a finding that the average weekly wage for the Prudential job was at least $500.00.