673 A.2d 882

UNITED CEREBRAL PALSY and Motorists Mutual Insurance Company, Appellees,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (Judith EMPH).

Supreme Court of Pennsylvania.

Submitted July 17, 1995.

Decided March 28, 1996.

546

Thomas J. Graham, Washington, for Judith Emph.

Edward A. McFarland, Pittsburgh, for Cerebral Palsy.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

## OPINION

CASTILLE, Justice.

The sole issue raised in this appeal is whether the Pennsylvania Workmen's Compensation Act ("Act") [1] permits a referee first to modify a claimant's workmen's compensation benefits based on the wage rate of the first available job

1. Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 1, *et seq.*

referred to the claimant within his or her physical limitations which was not pursued in good faith, and then to entirely suspend the claimant's workmen's compensation benefits at a later date based upon the wage rate of a subsequently referred job which was also not pursued in good faith.[2] For the reasons set forth below, we find that the initial modification and the subsequent suspension of benefits in this case were permissible, and, on that basis, we affirm the ruling of the Commonwealth Court.

The evidence giving rise to this appeal is that on May 13, 1988, appellant injured her back when she fell off a stool while working as a resident program trainee for United Cerebral Palsy ("UCP"). Appellant's pre-injury weekly wage with UCP was $177.85 per week. As a result of this injury, appellant began receiving workmen's compensation benefits in the amount of $160.07 per week pursuant to a Notice of Compensation Payable issued by UCP's insurance carrier.[3]

Following several physical examinations, UCP's physician released appellant to return to work on July 6, 1989 by filing an Affidavit of Return to Work. Because a position with UCP was not available after appellant was released to return to work, UCP engaged a job placement specialist ("job specialist") to assist in finding appropriate job referrals for appellant. UCP's job specialist initially met with appellant on August 9, 1989 in order to obtain her vocational and educational history. The job specialist also obtained and reviewed the medical

2. An important distinction exists as to the relief offered between a suspension of benefits versus a modification of benefits. When a claimant's benefits are suspended, the claimant no longer receives any workmen's compensation benefits because the claimant's physical disability no longer adversely affects her earning power since she can earn wages equal to or greater than her pre-injury wages. However, when the claimant's benefits are modified, the claimant receives a portion of her original workmen's compensation benefits since her physical disability only allows her to regain some, rather than all, of her pre-injury earning capacity. *See Dillon v. Workmen's Compensation Appeal Board (Greenwich Collieries)*, 536 Pa. 490, 502, 640 A.2d 386, 392 (1994).

3. Under the Workmen's Compensation Act, an employee is entitled to receive ninety percent (90%) of her average weekly wage if her wages at the time of the work-related injury were equal to or less than the statewide average weekly wage. 77 P.S. § 511.

reports of UCP's physician, including the Affidavit of Return to Work dated July 6, 1989. Based on all this information, the job specialist began a job search for available employment consistent with appellant's history and background.[4]

On August 19, 1989, UCP's job specialist notified appellant of the availability of a telephone sales position at Sears & Roebuck for twenty (20) to twenty-five (25) hours per week at a wage rate of $5 per hour. Appellant, however, failed to apply for this initial job referral. UCP's job specialist then referred appellant on September 20, 1989 to a clerk/cashier position at Dairy Mart for twenty-four (24) to forty (40) hours per week at a wage rate of $3.70 per hour. On that same date, appellant was also referred by UCP's job specialist to a third opportunity as a hostess at Valleybrook Country Club for forty (40) to forty-eight (48) hours per week at a wage rate of $5 to $6 per hour.[5] Appellant, however, also failed to pursue this position because she believed that it was too far from her home and that she was not qualified for the position.[6]

UCP's physician discharged appellant from his care on September 28, 1989. Between October 4, 1989 and January 20, 1990, UCP's job specialist notified appellant of at least seven other job opportunities. These other job referrals were for positions at the Ramada Inn, Eat & Park Restaurant, Lou

4. The only physical limitation noted by UCP's physician in the release was that appellant was more susceptible to the recurrence of a back sprain, pelvic obliquity or sacroiliitis. The issue of whether this "limitation" warrants benefits is not before this Court.

5. Of these three referrals, only the Valleybrook Country Club position would have supplied appellant with wages equal to or greater than her pre-injury wages.

6. Recently, in *Dilkus v. Workmen's Compensation Appeal Board (John F. Martin & Sons)*, 543 Pa. 392, 671 A.2d 1135 (1996) (No. 59 W.D. Appeal Dkt.1995), this Court held that a claimant's personal preference not to pursue a certain job because of the travel distance and low pay did not render a proffered job unsuitable since these non-medical factors were not supported by objective and substantiated reasons. Hence, appellant's belief that she was unqualified for the position and that she considered it too far to travel is of no bearing unless she could support her belief with objective and substantiated evidence. However, the issue of job suitability is not currently before the Court.

Pappan's Restaurant, Sheetz Convenience Store, Boron Oil Company, Idea Pharmacy and Lone Pine No. 1 Stop.

On February 15, 1990, as a result of appellant's failure to pursue the job referrals, UCP filed a petition to modify and/or suspend appellant's workmen's compensation benefits. After considering deposition testimony, exhibits and appellant's testimony, the referee found as a fact that appellant was physically capable of performing all of the jobs to which she was referred and that she failed to respond in good faith to at least eight out of the ten jobs. Moreover, the referee found as a fact that the parties stipulated that appellant's benefits should be suspended for the period of September 11, 1990 through March 31, 1991 because she returned to work at a business her brother owned where she was employed as a nurse's aide working approximately twenty (20) to thirty (30) hours per week for wages which were greater than or equal to her pre-injury wages of $177.85 per week.

Based on these factual findings, the referee granted UCP's petition and ordered that appellant's benefits be completely suspended as of August 19, 1989, the date when appellant initially failed to pursue the job referrals in good faith. However, the referee based the complete suspension of benefits on the wage rate of the hostess position at Valleybrook Country Club, a job which was referred to appellant on September 20, 1989 that offered wages equal to or greater than appellant's pre-injury wages of $177.85 per week.[7]

■ The Workmen's Compensation Appeal Board ("Board") initially affirmed the referee.[8] On rehearing, however, the

7. The referee found that the Valleybrook Country Club position presented appellant with the opportunity to earn $240 per week ($6 per hour at 40 hours per week). Since $240 per week was greater than appellant's pre-injury wage of $177.85 per week, the referee concluded that UCP was entitled to a complete suspension of benefits.

8. In affirming the referee's decision to suspend benefits, the Board recognized that his decision must be reviewed under the procedures established by this Court in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). Under *Kachinski*, an employer is entitled to either a suspension or termination of benefits if:

Board reversed the referee's suspension of benefits except for the time period from September 11, 1990 through March 31, 1991, the time period that the parties stipulated that appellant's benefits should be suspended because of her employment with her brother's company. For the remaining time beginning on August 19, 1989 to September 10, 1990 and from April 1, 1991 to the present, the Board ordered that appellant's benefits only be modified based upon the wage rate of the Sears & Roebuck position since this was determined to be the first available job that she failed to pursue in good faith. Accordingly, the Board ordered that appellant's benefits be modified to $51.38 per week rather than her original workmen's compensation benefit of $160.07 per week. The Board held that the referee had erroneously suspended appellant's benefits based on the wage rate of the Valleybrook Country Club job, reasoning that *Associated Plumbing & Heating v. Workmen's Compensation Appeal Board (Hartzog)*, 126 Pa. Commw. 618, 560 A.2d 865 (1989), prevented a suspension of benefits after a modification had been ordered.

█ In a 2–1 decision, the Commonwealth Court reversed and vacated the Board's holding that the referee erred in suspending appellant's benefits based upon the wage rate of the Valleybrook Country Club position. The majority also concluded that the referee improperly suspended appellant's benefits as of August 19, 1989 because the referee did so

(1) The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all his ability must produce medical evidence of a change in condition.

(2) The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance.

(3) The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

(4) If the referral fails to result in a job the claimant's benefits should continue.

*Id.,* 516 Pa. at 251–52, 532 A.2d at 379–80. For purposes of this appeal, appellant neither contests that the employer met its burden of proof nor disputes the referee's finding that she did not pursue at least 8 out of the 10 job referrals in good faith. Rather, as described *infra,* appellant contests whether her benefits can be completely suspended after they have been initially modified.

without a finding that the Valleybrook position was "available" on that date.[9]

The majority reasoned that the Board erred in its holding that appellant's benefits could not be suspended based upon the wage rate of the Valleybrook Country Club position because it misconstrued the holding in *Associated Plumbing* as limiting an employer either to modify or completely suspend a claimant's benefits based on the wages provided by the *first* available job not pursued in good faith. Instead, the majority believed that this case was governed by *Castro v. Workmen's Compensation Appeal Board (Albert Einstein Medical Center)*, 166 Pa.Commw. 89, 645 A.2d 1377 (1994), *appeal denied*, 540 Pa. 604, 655 A.2d 992 (1995), which held that even though a referee is required by *Associated Plumbing* to modify a claimant's benefits as of the date and wage rate of the first available job not pursued in good faith, a referee is not precluded from completely suspending a claimant's benefits at a later date based upon a subsequently available job not pursued in good faith which provides wages equal to or greater than claimant's pre-injury wages. In essence, the holding in *Castro* would allow appellant's benefits to be modified as of August 19, 1989 (the date the Sears & Roebuck position was referred to appellant which offered weekly wages less than appellant's pre-injury wages) and then be suspended as of September 20, 1989 (the date of the Valleybrook referral which offered wages equal to or greater than her pre-injury wages) if these positions were found to be available on the date of the referrals. However, since no findings were made as to whether these positions were actually available as of the date of the referral, the majority remanded the case for such findings of fact and ordered that any conclusions of law which arose from those findings be consistent with the court's opinion.

9. For purposes of workmen's compensation proceedings, a position is "available" if an employer can show that the position was open and within the claimant's capabilities. *Kachinski, supra,* 516 Pa. at 252, 532 A.2d at 379.

The dissent argued that the Board was correct in interpreting *Associated Plumbing* to require a referee to determine whether a claimant's workmen's compensation benefits be either modified or suspended based solely upon the wage rate of the first available job not pursued in good faith. The dissent also believed that *Associated Plumbing* affirmatively prohibited any subsequent modifications or suspensions of workmen's compensation benefits based upon failure to pursue later referred jobs. In essence, the dissent's opinion would entitle UCP only to a modification of benefits and not suspension of benefits since the first position which was not pursued in good faith (the Sears & Roebuck position) did not provide appellant with wages equal to or greater than her pre-injury wages.

The only issue before this Court concerns whether an employee's benefits can be completely suspended for failing to pursue a position in good faith which would provide a claimant with wages equal to or greater than her pre-injury wages *after* that employee's benefits have already been modified for failing to pursue other job referrals in good faith which did not provide the claimant with wages equal to or greater than her pre-injury wage rate. Our determination of whether such a modification and suspension is permissible depends on our analysis of the controlling statutory language.[10] Section 413 of the Act, provides in pertinent part:

A referee designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its referee, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of the dependent has changed. Such modification,

**10.** For this appeal, the standard of review of a workmen's compensation order is limited to determining whether the lower tribunals committed a constitutional violation or an error of law and whether substantial evidence supports the necessary findings of fact. *Pieper v. Ametek–Thermox Instruments Div.*, 526 Pa. 25, 31, 584 A.2d 301, 303 (1990).

reinstatement, suspension, or termination shall be made as of the date upon which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or upon which it is shown that the status of any dependent has changed ... And provided further, That where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, unless it be shown that the loss in earnings does not result from the disability due to the injury.

77 P.S. § 772. As this Court noted in *Kachinski, supra,* Section 413 of the Act "governs the procedure for filing a modification petition" but it "provides no guidelines for ruling on the merits" since "to date the General Assembly has seen fit to allow the courts to wrestle with this issue." 516 Pa. at 244, n. 1, 532 A.2d at 376, n. 1.

 When reviewing a statute, the interpretive principles set forth by the Statutory Construction Act govern. *See* 1 Pa.C.S. § 1501 *et seq.* In interpreting any statute, the legislative intent behind the statute's enactment controls its meaning and application. 1 Pa.C.S. § 1921(a); *Frontini v. Commonwealth Department of Transp.,* 527 Pa. 448, 451, 593 A.2d 410, 411–12 (1991). When the words of the statute are clear and unambiguous, we will not disregard the letter of the law under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b). Furthermore, when construing the Workmen's Compensation Act, which is remedial in nature and intended to benefit the Pennsylvania worker, we are mindful that it must be liberally construed to effectuate its humanitarian objectives. *Krawchuk v. Philadelphia Electric Co.,* 497 Pa. 115, 120, 439 A.2d 627, 630 (1981).

 In reaching the legislative intent of Section 413(a) of the Act, it is important that one understand the following two concepts. First, disability under the Act has always been synonymous in Pennsylvania with the loss of earning power.

*Kachinski, supra.* Second, as previously discussed herein, there is an important distinction between the relief offered when compensation is suspended versus a modification of benefits. When a claimant's benefits are suspended, the claimant no longer receives any workmen's compensation benefits because the claimant's physical disability no longer adversely affects her earning power since she can earn wages equal to or greater than her pre-injury wages. On the other hand, when the claimant's benefits are modified, the claimant receives a portion of her original workmen's compensation benefits since her physical disability only allows her to regain some, rather than all, of her pre-injury earning capacity.

▇▇▇ Here, Section 413(a) of the Act permits a *modification,* reinstatement, *suspension* or termination of benefits "as of the date upon which it is shown that the *disability* of the injured employee has increased, decreased, recurred, or has temporarily or finally ceased ..." 77 P.S. § 772 (emphasis added). Nothing in the language of Section 413(a) can be read to limit an employer to only one of the allowed remedies based upon whichever one occurs first in time. Instead, the words of Section 413(a) show in an unambiguous fashion that the legislature has clearly decided that an employer is entitled to each distinct remedy offered on the date that the claimant's earning power undergoes a change justifying that remedy. Thus, Section 413(a) allows a referee initially to modify a claimant's benefits effective as of the date of the first job referral not pursued in good faith and then to suspend benefits as of a later date based upon a subsequent referred job which pays wages equal to or greater than claimant's pre-injury wages as long as the subsequent job accurately reflects claimant's earning power on that specific date. To hold otherwise would defeat the clear legislative purpose of Section 413(a).[11]

11. This holding is consistent with the progression of thought that has evolved from the Commonwealth Court in interpreting the timing of when and the extent to which an employee's benefits can be modified or suspended under Section 413. In *Associated Plumbing,* the Commonwealth Court held that the employer was entitled to a modification of benefits effective as of the date of the first available job which the

We also believe that our decision today properly balances the competing interests between the humanitarian nature of the Act in benefitting the Pennsylvania worker and between an employer who acts in good faith in attempting to find available positions for a workmen's compensation claimant. In *Kachinski*, this Court stated that the continued viability of the workmen's compensation system "depends on the good faith of the participants." *Kachinski*, 516 Pa. at 252, 532 A.2d at 380. Here, however, appellant has been found not to have acted in good faith in pursuing positions which were within her physical abilities. As the *Castro* court succinctly and correctly stated:

claimant failed to pursue in good faith. The Commonwealth Court also held that where two of the jobs not pursued in good faith were available on the same date, calculation of the modification must be based on the wages of the job generally representative of the type of job referrals the claimant was receiving from the employer. *Associated Plumbing* did not affirmatively state that an employer is precluded from subsequently seeking a complete suspension of benefits after the claimant's benefits were modified.

The same point was made again by the subsequent Commonwealth Court cases of *Roadway Express, Inc. v. Workmen's Compensation Appeal Board (Allen)*, 152 Pa.Commw. 318, 618 A.2d 1224 (1992) and *Miller v. Workmen's Compensation Appeal Board (Fischbach & Moore)*, 160 Pa.Commw. 589, 635 A.2d 709 (1993). In *Roadway Express*, the Commonwealth Court, relying on *Associated Plumbing*, held that the effective date for modifying a claimant's benefits could be a date four years before the employer filed its modification petition since the Act imposes no time limitation for filing a modification petition in relation to the job referrals supplied by the employer. The *Miller* court, also relying on *Associated Plumbing*, remanded the case to the Board since the Board based the modification on the wage rate of a job which was neither available on the date chosen for modification nor actually available to the claimant. Like *Associated Plumbing*, neither case discussed whether an employer could seek a complete suspension of benefits after a claimant's benefits had been modified.

In *Kurtiak v. Workmen's Compensation Appeal Board (Western Sizzlin' Steak House)*, 160 Pa.Commw. 637, 635 A.2d 732 (1993), *appeal denied*, 540 Pa. 643, 659 A.2d 561 (1995), the Commonwealth Court held that when two positions are available on the same date, modification should be based upon the position that more accurately reflects the claimant's earning capacity.

Finally, in *Castro v. Workmen's Compensation Appeal Board (Albert Einstein Medical Center)*, *supra*, the Commonwealth Court held that a claimant's benefits could be suspended after an initial modification of benefits provided the position on which the suspension was based provided wages equal to or greater than claimant's pre-injury wages.

"Allowing Claimant to ignore all the jobs referred to her by Employer and only sanctioning Claimant with a modification based on the wage of the first job she ignored would penalize Employer and reward Claimant for her bad faith. We do not believe that suspending Claimant's benefits under these facts compromises the humanitarian objectives of the Act."

166 Pa.Commw. at 96–97, 645 A.2d at 1381, *supra.*

The Commonwealth Court, therefore, was correct in determining that appellant's benefits initially could be modified because the first job referral she failed to pursue in good faith did not provide wages equal to or greater than her pre-injury wages, and, then be suspended as of a later date because a subsequently referred job, which she also failed to pursue in good faith, provided wages equal to or greater than her pre-injury wages. The Commonwealth Court was also correct in that the referee did not make findings that the positions in question were available on the dates they were referred to appellant. Thus, the order of the Commonwealth Court is affirmed and the case is remanded to the Board for findings of fact and conclusions of law consistent with this opinion.

NEWMAN, J., did not participate in the consideration or decision of this case.

NIX, C.J., concurs in the result.