**BETHLEHEM STEEL CORPORATION,**
Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (ZIMA),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 6, 2001.

Decided June 4, 2001.

---

Karen S. Coates, Harrisburg, for petitioner.

Fred M. Feder, Philadelphia, for respondent.

Before McGINLEY, J., LEADBETTER, J, and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

Bethlehem Steel Corporation (Employer) petitions for review from the November 30, 2000 order of the Workers' Compensation Appeal Board (Board) that affirmed the May 5, 1998 order of the Workers' Compensation Judge (WCJ) granting hearing loss benefits to Peter Zima (Claimant). We are asked to consider whether the WCJ erred in concluding that Claimant's hearing loss was attributable to "long-term exposure" to hazardous occupational noise as that term is defined in Section 105.6 of the Workers' Compensation Act (Act)[1] and, consequently, whether the claim petition is barred by the three-year statute of limitations found in Section 306(c)(8)(viii) of the Act.[2] We affirm the Board's order.

On June 28, 1996, Claimant filed a claim petition alleging that he suffered bilateral, occupationally-induced hearing loss while working for Employer and that he was last exposed to hazardous occupational noise on June 25, 1996.[3] (Finding of Fact "F.F." 1; Certified Record "C.R." 1) Claimant started working for Employer in 1970 and, in 1977, he began working as a crane hookup man where he was exposed to constant noise from the clanging of chains. (F.F.2, 3) He also used a cold saw to cut cold steel and sheers to cut mine archers. (F.F.3) Claimant was transferred to the pipe mill in 1978, where he continues to work as a welder. (*Id.*) According to Claimant, each job had loud noise associated with it, a lot of metal on metal noise caused by overhead cranes picking up and dropping pipes. (*Id.*) Claimant stated that every time a crane dropped a pipe, it sounded as if "you put a bucket on your head and hit it with a hammer. . . ." (*Id.* 3, 4; Reproduced Record "R.R." 46) Claimant was given ear protection to wear, but it was not effective. (F.F.4)

Although Claimant had his hearing tested every two years, no one ever explained

---

1. Act of June 2, 1915, P.L. 736, *as amended,* added by Section 1 of the Act of February 23, 1995 (Act 1 of 1995), P.L. 1, 77 P.S. § 25.6.

2. Added by Section 2 of Act 1 of 1995, 77 P.S. § 513(8)(viii).

3. The WCJ's findings of fact erroneously state that Claimant's petition was filed on June 25, 1996. The claim petition and the Board's docket sheet, however, evidence that the petition was filed on June 28, 1996.

to him that he was gradually losing it. (*Id.*) Claimant admitted that he was usually laid off approximately four months a year due to lack of work. (F.F.5) Claimant further testified that he is a hunter and, therefore, has shot a rifle. (*Id.*) He stated that he was never formally advised that he had a work-related hearing loss until Joseph Sataloff, M.D, examined him on May 28, 1997.[4]

Employer's Exhibit 3, which was admitted into the record without objection, is Claimant's employment history. It shows that for the three years prior to his claim petition, Claimant was laid off as follows:

June 6 to October 3, 1993

August 4 to October 30, 1994

December 23, 1994 to March 5, 1995

November 16, 1995 to March 3, 1996

(Employer's Exhibit 3)

Based upon this information, the WCJ found that although Claimant was laid off between December 23, 1994 and March 5, 1995, he worked forty-two weeks during the year beginning November 16, 1994 and ending November 15, 1995. (F.F.12) He further concluded that Claimant's long-term exposure to hazardous occupational noise occurred at least as late as November 15, 1995 and that therefore, the June 28, 1996 claim petition was timely filed. (*Id.*) Accordingly, Claimant was awarded 35.88 weeks of hearing loss benefits at the rate of $266.53 per week. (*Id.* 13)

On appeal to the Board, Employer argued that Claimant's petition was barred by the statute of limitations in that Claimant did not have long-term exposure to hazardous occupational noise for the required number of weeks in a year within three years preceding the claim petition. Specifically, Employer maintained that the WCJ's selection of November 16, 1994 through November 15, 1995 as the year in which Claimant experienced long-term exposure to hazardous occupational noise was arbitrary. It argued that there were two methods of determining the relevant time period of long-term exposure to hazardous occupational noise under Section 105.6 of the Act: using a calendar year from January 1 through December 31 or using the date of injury to commence the "look-back" period. Employer maintained that Claimant's petition was untimely under either method.

■ The Board rejected Employer's methods and concluded that the forty weeks of long-term exposure may occur in *any* twelve-month period within the three years prior to the last date of long-term hazardous exposure. In this appeal, we are presented with the same issue.[5,6]

Section 306(c)(8)(viii) of the Act provides that

[w]henever an occupational hearing loss caused by long-term exposure to hazardous occupational noise is the basis for compensation or additional compensa-

---

4. Employer does not challenge the WCJ's finding that Claimant suffers from a permanent, binaural hearing loss, which was calculated as a 13.8% impairment in hearing using the American Medical Association's Impairment Guides. (F.F.7, 10, 11) Therefore, we need not summarize the medical testimony provided by Dr. Sataloff or Ronald Grossman, M.D., Employer's medical expert.

5. On review, we are limited to determining whether constitutional rights were violated,

an error of law was committed, or whether the necessary findings of fact are supported by substantial evidence. *Urban v. Workers' Compensation Appeal Board (Burlington Coat Factory)*, 763 A.2d 564 (Pa.Cmwlth.2000).

6. Employer further argued before the Board that Claimant did not provide timely notice of his hearing loss. The Board rejected this argument and it has not been raised on appeal.

tion, the claim shall be barred unless a petition is filed within three years after the date of last exposure to hazardous occupational noise in the employ of the employer against whom benefits are sought.

Section 105.6 of the Act defines "long-term exposure" as "exposure to noise exceeding the permissible daily exposure for at least three days each week for forty weeks of *one year*." 77 P.S. § 25.6 (emphasis added).

■ In its first argument on appeal, Employer maintains that the term "year" as used in Section 105.6 of the Act implies a calendar year beginning January 1 and ending December 31. Although not defined by the Act, the term "year" is defined in Section 1991 of the Statutory Construction Act of 1972 (Statutory Construction Act) as "[a] calendar year." 1 Pa.C.S. § 1991.

Our Supreme Court, in *Commonwealth v. Fenati*, 561 Pa. 106, 748 A.2d 205 (2000), recently addressed the term "calendar year." In that case, Fenati was convicted of various crimes in 1988 and sentenced to life imprisonment for the most serious of the crimes. His conviction was upheld by the Superior Court and, in 1990, the Supreme Court denied a petition for allowance of appeal.

Thereafter, on January 16, 1997, Fenati filed his first Post Conviction Relief Act (PCRA) [7] petition. After holding a hearing on the merits, the court of common pleas dismissed the PCRA petition.

On appeal, the Superior Court determined that Fenati's PCRA petition was untimely because it was not filed within one year after his judgment of sentence became final.[8] The Court noted that Fenati's judgment of sentence became final ninety days after the Supreme Court denied the petition for allowance of appeal in 1990, many years prior to the filing of the PCRA petition.

The Superior Court, however, noted that there was an exception to the timeliness rule applicable to Fenati's case. In 1996, the PCRA was amended to provide that a first PCRA petition would be deemed timely if it was filed within one year of the effective date of the amendments, which was January 16, 1996. Further determining that a "year" is *always* 365 days, the Superior Court determined that the 365th day for filing a first PCRA petition fell on January 15, 1997, despite the fact that 1996 was a leap year, and that thus, Fenati's PCRA petition was untimely.

The Supreme Court rejected the Superior Court's analysis, stating that the leap day of a leap year is not separate and apart from the rest of the calendar since it is commonly recognized that a leap year consists of 366 days rather than 365 days. The High Court concluded that this approach to defining what constitutes a "calendar year" was the most logical. Since the PCRA petition was filed on the 366th day during a twelve-month cycle in which a leap year occurred, the Court determined that Fenati's petition was timely.

In applying *Fenati* to the case *sub judice*, we follow the Supreme Court's lead that a calendar year encompasses 365 days, or 366 days in a leap year, beginning at any given point of the calendar. Thus, we reject Employer's argument that a calendar year must begin January 1 and end December 31. Such a construction would

---

**7.** 42 Pa.C.S. §§ 9541–9546.

**8.** Section 9545(b)(1) of the Judicial Code, 42 Pa.C.S. § 9545(b)(1), provides that a PCRA petition shall be filed within one year of the date that a judgment of sentence becomes final.

yield an absurd result. *See* Section 1922 of the Statutory Construction Act, 1 Pa. C.S. § 1922 (in ascertaining the intent of the General Assembly in enacting a statute, it is presumed that the General Assembly did not intend a result that is absurd, impossible of execution or unreasonable).

 In its second argument on appeal, Employer maintains that the date of injury commences the "look-back" period. Here, the WCJ found Claimant's date of injury to be June 25, 1996. Therefore, Employer asserts that Claimant would have to have been exposed to long-term hazardous occupational noise for forty weeks in one of three time periods: June 25, 1993 to June 25, 1994, June 25, 1994 to June 25, 1995, or June 25, 1995 to June 25, 1996. Employer maintains that Claimant failed to work forty weeks in any one of these "look-back" years.

We agree with the WCJ and the Board that the Act does not mandate that the "look-back" period commence with either the date of injury or the date of filing the claim petition to mark the applicable one-year period in which the forty weeks must fall. Had the General Assembly so intended, it could have easily stated as much in the Act. We cannot judicially alter the interpretation of a statute where the General Assembly has failed to do so legislatively. *Vlasic Farms, Inc. v. Pennsylvania Labor Relations Board*, 734 A.2d 487 (Pa.Cmwlth.), *appeal granted*, 561 Pa. 664, 747 A.2d 904 (1999).

We are ever mindful that the Act must be liberally construed in favor of the employee to effectuate its humanitarian objectives. *See United Cerebral Palsy v. Workmen's Compensation Appeal Board (Emph)*, 543 Pa. 544, 673 A.2d 882 (1996). Moreover, we recognize the wide potential for abuse in adopting Employer's interpretation of the Act. If we had adopted either

of Employer's alternate methods of calculating a "year" under Section 105.6 of the Act, an employer could easily control an employee's work schedule so that he or she never worked "forty weeks" in any given "year." Accordingly, we must affirm the Board's order.

### ORDER

AND NOW, this 4th day of June, 2001, the November 30, 2000 order of the Workers' Compensation Appeal Board is AFFIRMED.