**Charles A. TRIMMER, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (MONAGHAN TOWNSHIP), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 13, 2005.

Decided Dec. 21, 2005.

**142**

Gregory R. Reed, Harrisburg, for petitioner.

Christina L. Bradley, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, Judge, PELLEGRINI, Judge, and COHN JUBELIRER, Judge.

OPINION BY Judge SMITH–RIBNER.

Charles A. Trimmer petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of Workers' Compensation Judge (WCJ) Christina M. Tarantelli granting the petition to modify compensation benefits filed by Monaghan Township (Employer). Trimmer questions whether the Board erroneously ignored the directives of this Court on remand by modifying Trimmer's benefits even though Employer presented no new evidence, where he can be, at best, an impaired garage supervisor.

## I

The facts of this case are provided in this Court's prior decision at *Trimmer v. Workers' Compensation Appeal Board (Monaghan Township)*, 728 A.2d 438 (Pa. Cmwlth.1999) *(Trimmer I)*. To summarize, Trimmer sustained injuries to his right leg, left ankle and head in October 1989 while acting as a volunteer firefighter for Employer, and thereafter he began receiving total disability benefits pursuant to a notice of compensation payable. Prior to his injury, Trimmer had been self-employed as a solo mechanic at his own automobile repair business; however, after he was injured, Trimmer moved into a supervisory role and hired two employees as mechanics. In February 1995 Employer filed petitions to modify and to suspend Trimmer's benefits alleging that he had sufficiently recovered to resume his employment without loss of earnings.

At the initial hearing, Employer's fact witness, Rodney S. Benner, presented evidence that *unimpaired* garage supervisors in comparable geographic areas earned an average of $18,730 annually based on an October 1994 labor market survey that he performed. Employer also presented a medical witness, Richard J. Boal, M.D., who testified that Trimmer could perform mechanical work although he had not fully recovered from his injuries. Dr. Boal explained that Trimmer should not remain sedentary for long periods of time, that he has limited crawling and squatting capacity and that he can work up to eight hours per day and can perform all general tasks

in an automobile repair shop. Trimmer presented the testimony of John S. Risser, a board-certified vocational expert, who affirmed Benner's earnings figures but clarified that the figures do not accurately reflect the earning power of a garage supervisor with Trimmer's physical limitations based on the medical reports of Jay J. Cho, M.D. and Craig W. Fultz, M.D.

WCJ Jacquelyn S. Jacobs granted Employer's suspension petition, finding that Trimmer had an annual earning capacity of $18,000, and the Board affirmed. In its April 21, 1999 opinion and order in *Trimmer I*, this Court vacated the Board's suspension order and remanded the matter so that the earning capacity of a garage supervisor with Trimmer's physical limitations, as described by Dr. Boal, could be established. The Court emphasized that all medical testimony agreed that Trimmer had not recovered from his work-related injury and that he was subject to requirements that he be able to change positions as needed and not frequently squat or crawl. The vocational testimony reflected an annual earning capacity of $18,000 for an *unimpaired* garage supervisor, and the only expert vocational testimony, i.e. from Risser, was that an individual with Trimmer's physical limitations would not have the same earning capacity. The Court held that the record did not support the determination that Trimmer had regained all of his pre-injury earning capacity, and the Court remanded for a WCJ to consider Trimmer's earning capacity in light of his physical restrictions as established by the testimony of Dr. Boal and other relevant and credible evidence of record and then to determine whether Trimmer's benefits should be modified.

On remand, WCJ Tarantelli did not admit additional evidence into the record. Rather, she relied solely upon WCJ Jacobs' findings and again determined that Trimmer's benefits should be modified by $18,000. WCJ Tarantelli stated that WCJ Jacob's decision was not made in a vacuum but rather was based upon Trimmer's actual activities that he acknowledged performing in his own shop.[1] In defiance of the Court's remand order, WCJ Tarantelli determined that Trimmer was capable of performing the duties of an owner/operator in his own garage. The Board again affirmed, stating that the credible testimony of Dr. Boal was that Trimmer's work injury did not present any impairment from his performing his pre-injury work.

In an opinion and order of September 6, 2002 the Court concluded that WCJ Tarantelli and the Board ignored the Court's earlier remand directives, holding that the record did not support a finding that Trimmer had an annual earning capacity of $18,000. Once again the Court remanded the matter, clarifying as follows:

> To impute an earning capacity to Trimmer, Employer must establish the earning power of a garage supervisor in the geographical area with the physical limitations ascribed to Trimmer by Dr. Boal. *Among other ways, this may be accomplished with expert vocational testimony that takes those physical limitations into account. It may not be accomplished only by the evidence currently on the record in this case.*

---

1. WCJ Tarantelli stated that this Court "apparently missed" Risser's admission that in his own garage Trimmer would have the flexibility to be able to change positions as needed and stated further: "Apparently it has escaped the appellate body's notice that Mr. Rister [sic] attested that the work activities [Trimmer] admitted performing were consistent with the duties performed by a mechanic and/or garage supervisor." WCJ Tarantelli's decision, January 30, 2001, p. 15; R.R. 191a.

*Trimmer v. Workers' Compensation Appeal Board (Monaghan Township)* (Pa. Cmwlth., No. 771 C.D.2002, filed September 6, 2002) *(Trimmer II)*, slip op. at 5 (emphasis added).[2]

On the second remand, WCJ Tarantelli held a hearing for Employer to enter additional vocational evidence in accordance with the Court's directives. Employer presented vocational testimony from Benner. Employer stipulated and Benner agreed that he had not performed any additional labor market surveys based upon a garage supervisor with impairments and that his testimony was limited to the facts that existed as of the date of his report on October 27, 1994. Benner had not been provided with any updated or new reports. Nevertheless, Benner stated that Trimmer is capable of performing the duties of an unimpaired garage supervisor. Benner asserted that a garage supervisor may frequently lift ten pounds and may occasionally lift twenty pounds and is generally able to alternate between sitting and standing throughout the day. He further explained that a garage supervisor may have to squat or crawl to assist a mechanic but that assistance is discretionary. Trimmer presented additional vocational testimony from Risser, who testified that Trimmer is not employable as an unimpaired garage supervisor given the limitations described by Dr. Boal and contained in the written report of Dr. Fultz.

WCJ Tarantelli credited the testimony of Benner and found that the majority of

Risser's opinions were based on the report of Dr. Fultz, which was deemed not relevant given the Court's directive to consider limitations based upon Dr. Boal's testimony. The WCJ concluded that Employer met its burden of proof, and she modified Trimmer's benefits to $25.87 per week based on an annual earning capacity of $18,730. The Board determined that the WCJ followed this Court's directives to open the record for additional expert vocational testimony to establish the earning power of a garage supervisor with Trimmer's limitations. The Board concluded that the WCJ's factual findings were supported by substantial and competent evidence, and it affirmed.[3]

## II

The Court explained in *Trimmer I*, that an employer meets its burden of proof in a suspension proceeding by establishing that a claimant has recovered all of his earning power. *See Harle v. Workmen's Compensation Appeal Board (Telegraph Press, Inc.)*, 540 Pa. 482, 658 A.2d 766 (1995). Where a claimant has returned to work, the employer does not have to establish that the claimant's current earnings match his pre-injury earnings; it is sufficient to establish that the claimant's earning power is no longer affected by the work-related injury. *Id.* If the evidence establishes that the claimant has regained some rather than all of his pre-injury earning capacity then benefits

---

**2.** This Court determined that the Board and the WCJ correctly relied on *Rossi v. Workmen's Compensation Appeal Board (City of Hazleton)*, 164 Pa.Cmwlth. 233, 642 A.2d 1153 (1994), for the proposition that the earning power of a working claimant may be established by expert vocational testimony based on wages paid for the same work in the geographical area during the relevant time frame where there is no credible evidence of the claimant's actual earnings.

**3.** The Court's review is limited to determining whether constitutional rights were violated, whether an error of law was committed, whether practices and procedures of the Board were followed and whether necessary findings of fact are supported by substantial evidence in the record. *Jeanes Hosp. v. Workers' Compensation Appeal Board (Hass)*, 582 Pa. 405, 872 A.2d 159 (2005).

are modified rather than suspended, and the claimant will continue to receive a portion of his original benefits. *See United Cerebral Palsy v. Workmen's Compensation Appeal Board (Emph)*, 543 Pa. 544, 673 A.2d 882 (1996).

 As the Court explained in *Trimmer II*, where a claimant returns to gainful employment in a position that eludes proof of the claimant's actual earnings, such as self-employment, compensation benefits may be modified or suspended based upon imputed earning capacity, which may be established through expert vocational testimony regarding wages earned by workers in comparable positions in the geographical area during the relevant time frame. *Capuano v. Workers' Compensation Appeal Board (Boeing Helicopter Co.)*, 724 A.2d 407 (Pa.Cmwlth.1999); *Rossi v. Workmen's Compensation Appeal Board (City of Hazleton)*, 164 Pa.Cmwlth. 233, 642 A.2d 1153 (1994). As the Court plainly held in *Trimmer I*, however, there is no point in attempting to use earnings of unimpaired persons to establish imputed earnings for a claimant who retains significant impairment that would affect his or her employability and/or earning capacity if he or she were employed.

Trimmer first argues that the Board and the WCJ, for a second time, have ignored the Court and have erroneously persisted with the fiction that Trimmer has the earning capacity of an unimpaired garage supervisor. The Court in *Trimmer I* held that the record established earning capacity for an unimpaired garage supervisor and that it did not support a finding that Trimmer had the same earning capacity. In *Trimmer II* the Court noted that under the doctrine of law of the case, where an appellate court has considered an issue on appeal, it will not reconsider its ruling in a later appeal of another phase of the same case. *Municipality of Monroeville v. Prin*, 680 A.2d 9 (Pa.Cmwlth.1996).

Trimmer contends that following the second remand, the WCJ and the Board were more subtle but no less defiant than after the first remand in finding that Trimmer had an earning capacity over $18,000, even though Employer presented no new evidence at the second remand hearing. Benner testified in his deposition on the second remand that he believes that Trimmer can perform the garage supervisor position regardless of his impairment. Trimmer submits that this second remand provided Employer a third opportunity to present evidence of the earning capacity of an impaired garage supervisor, and he asserts that Employer could not meet its burden on the second remand because it presented absolutely no new evidence. Employer's counsel stated at the outset of Benner's July 8, 2003 deposition that Benner's testimony was based upon medical evidence generated before his prior testimony of November 1, 1995 and that he had not performed a new market survey or been provided with new reports. This was Employer's approach despite the fact that the Court specifically stated in *Trimmer II* that establishing the earning power of an impaired garage supervisor in the geographic area could not be accomplished with only the evidence of record.[4]

Trimmer maintains that the testimony of Benner was and is fatally flawed because he admitted that his market survey performed in 1994 was in regard to unim-

4. Trimmer also argues that the Board erred in affirming the WCJ's finding that Trimmer's witness Risser agreed with Benner regarding Trimmer's earning capacity. As Risser's testimony indicates, he agreed only that a figure of $18,730 was reasonable for earnings of an unimpaired garage supervisor in the area, and in fact the Board noted agreement only to that extent.

paired garage supervisors, and he readily admitted that he did not conduct any later market survey based upon Trimmer's acknowledged impairment. Rather, Benner testified in 2003 that he thought that Trimmer could perform the garage supervisor position even with his impairments. Benner opined that one is a garage supervisor or he is not, and he disagreed that impairment was relevant, although, he took no steps to attempt to document this assertion. Trimmer now asks the Court to finally resolve this matter as he has not received total disability benefits since January 1995 and his 500 weeks of partial disability have expired.

Employer in response asserts that it did comply with the directives of this Court on the second remand by presenting "new evidence" in the form of Benner's July 2003 deposition in which he opined that Trimmer could perform the job of garage supervisor with his impairments. Benner provided his qualifications as an expert vocational witness. He described the duties of the garage supervisor as being light work, and he opined that they were well within the restrictions imposed by Dr. Boal. To address the Court's focus on impaired versus unimpaired employees, he testified that Trimmer is capable of performing the job of garage supervisor with his impairments according to Dr. Boal, and he noted further that Trimmer has been working as a garage supervisor. Employer contends that it would have been legally and procedurally inappropriate for it to present new evidence in the form of new medical evidence or a new vocational survey or imputed earnings assessment as the Court's remand referred to restrictions imposed by Dr. Boal and that a labor market survey performed in 2002 or 2003 would have no way of determining earning capacity of a garage supervisor with those restrictions.

■ The Court concludes that the WCJ and the Board once again failed to comply with the directives of this Court on remand. As stated in *Trimmer II* in regard to the second remand, Employer could not establish the imputed earning capacity of a garage supervisor with Trimmer's impairment with the evidence of record in this case. Although Benner testified as an expert in 2003, he essentially added nothing new to the evidence that had twice before been held to be inadequate. At the time of Benner's original testimony, he admitted that he made all of his inquiries with employers deemed to be relevant without any regard to impairment. By the time of his testimony on November 1, 1995, however, Benner was familiar with the testimony of Dr. Boal and with a physical capacities form prepared by Dr. Fultz. N.T., November 1, 1995, pp. 24—26; R.R. 55a—57a. He discussed aspects of auto mechanics' and supervisors' jobs in relation to those restrictions, although he ultimately stated that he did not wish to go beyond testifying to wage and hour information. *Id.*, p. 39; R.R. 70a.

In the present situation, as before, no employer with information relevant to the question of imputed earning capacity was ever asked whether it would employ a garage supervisor with Trimmer's acknowledged impairment and what effect if any such impairment would have on earning capacity. Once again Employer failed to meet its burden simply to show what the proper imputed earning capacity should be, but the WCJ and the Board nevertheless accepted Employer's figure for the earning capacity of an unimpaired garage supervisor.

The Court therefore must reverse the decision of the Board. The repeated defiance by the Board and the WCJ of this Court's remand orders has resulted in extraordinary delay. Nevertheless, the length of the period of litigation may not

alter the result that Employer failed to meet its burden on its modification petition, and Trimmer therefore is entitled to dismissal of that petition and to total disability benefits from the time of the original modification, which was effective January 6, 1995. This case is remanded not to provide Employer a fourth opportunity to properly meet its burden, but rather solely for a determination of the proper amount of benefits payable to Trimmer taking into account modified benefits that he already has received. In addition, because the situation is that Trimmer is working as a supervisor in his own shop, any net earnings from his business shall be offset as well, even though he testified originally that there were negative earnings. Earnings from self-employment may be credited against the amount of benefits that an employer must pay to a claimant. *Capuano*; *University of Pittsburgh v. Workmen's Compensation Appeal Board (Johnson)*, 167 Pa.Cmwlth. 643, 648 A.2d 1315 (1994). An additional hearing may be scheduled solely for the purpose of receiving evidence to establish the total benefits owing, the amount of partial benefits received and the profits from Trimmer's business to be offset, if any.

### ORDER

AND NOW, this 21st day of December, 2005, the decision of the Workers' Compensation Appeal Board is reversed, and the modification/suspension petition of Monaghan Township is dismissed. Charles A. Trimmer is entitled to total disability benefits as of January 6, 1995. This matter is remanded for the sole purpose of conducting proceedings to determine the amount of benefits payable to Charles A. Trimmer in accordance with the foregoing opinion.

Jurisdiction is relinquished.

DISSENTING OPINION by Judge COHN JUBELIRER.

I must dissent from the majority's opinion.

In a workers' compensation case, the WCJ is the ultimate fact finder and has the sole prerogative of assessing credibility and resolving conflicts in testimony. *Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Skirpan)*, 132 Pa.Cmwlth. 277, 572 A.2d 838, 841 (1990), *affirmed,* 531 Pa. 287, 612 A.2d 434 (1992). The WCJ may accept or reject, in whole or in part, the testimony of any witness. *Id.*

It appears to me that the majority has completely re-weighed the evidence that was before the WCJ in this case, then made the findings and reached the result it wished the WCJ had reached on our multiple remands, but did not. In *Trimmer I* and *Trimmer II*, the Court reversed the Board, but seemingly allowed the WCJ to find that Claimant was able to work; it remanded the case back to the WCJ for her consideration of Employer's modification petition and for her determination of Claimant's earning capacity. Now the majority has not only reversed the Board, but has also *dismissed* Employer's suspension/modification petition and determined that Claimant is entitled to *total* disability benefits as of January 6, 1995, notwithstanding the fact that he is and has been actually performing the job at issue. In essence, the majority has substituted its discretion for that of the WCJ, and made the findings of fact in this case. It is that with which I must disagree.

This Court is *required* to affirm findings of fact unless those findings are not supported by substantial evidence. Section 704 of Administrative Agency Law, 2 Pa. C.S. § 704. Substantial evidence has been

defined as relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Bethenergy Mines*, 572 A.2d at 840 (quoting *Republic Steel Corp. v. Workmen's Comp. Appeal Bd. (Shinsky)*, 492 Pa. 1, 5, 421 A.2d 1060, 1062–63 (1980)). Accordingly, we must determine whether there is rational support in the record for a WCJ's action. *See id.* Thus, our review here of the WCJ's findings of fact should be limited to the question of whether they are adequately supported by the evidence as a whole. *Id.* I believe Employer produced substantial evidence of record to establish Claimant is capable of performing the job of garage supervisor, regardless of his impairment: because he was *actually performing the job* of a garage supervisor, Claimant had the earning capacity of a garage supervisor.

In a decision dated April 21, 1999, this Court stated that it "must accept the WCJ's finding that Trimmer has the physical capabilities and impairments ascribed to him in Dr. Boal's opinion." *Trimmer I*, 728 A.2d at 441. The WCJ found that Dr. Boal had the following opinions regarding Claimant's physical capacities:

(a) Capable of working up to 8 hours per day

(b) Avoid constant standing

(c) Change position as needed

(d) Occasional crawling/squatting

(e) Frequent lifting up to 50 pounds

(f) Occasional lifting up to 100 pounds

(g) Capable of doing any type of physical work he desires

(h) Capable of performing all the tasks that would be done in a general automobile repair shop, including pulling engines, installing engines, changing tires, [and] installing mufflers.

(WCJ Decision 3/22/04, Findings of Fact (FOF) ¶ 24; Dep. Boal, 6–20–95, at 9, 15, 18; Dep. Boal, Ex. 1.)

In *Trimmer II*, an unreported decision dated September 6, 2002, this Court instructed Employer "[t]o impute an earning capacity [to Claimant] ... of a garage supervisor in the geographical area with the physical limitations ascribed to [him] by Dr. Boal." *Trimmer II*, slip. op. at 5. Both Dr. Boal and Employer's vocational expert, Rodney Benner, testified that Claimant's impairment **does not** prevent him from performing the job of garage supervisor. (Dep. Boal, 6–20–95 at 15, 17–19; Dep. Benner, 7–8–03 at 13, 15–16, 19.) Mr. Benner explained that the garage supervisor position is light work, and "well within" Claimant's restrictions as set forth by Dr. Boal. (Test. 11–1–95, at 23–24; Dep. Benner, 7–8–03, at 16–17.) As found by Mr. Benner, the Dictionary of Occupational Titles provides that a garage supervisor position involves the "supervision and coordination of activities of mechanics engaged in repairing and servicing trucks and automobiles." (Test. 11–1–95, at 20, 22.) At the hearing in 1995, Mr. Benner testified that:

A supervisor would schedule work for customers, estimate costs, accepts payment for those services rendered, interacts with customers to ensure satisfactory service. And they assign and train, evaluate mechanics performance, diagnoses, and inspects vehicles, orders parts, maintains inventories, maintains records on station operations. And they perform a variety of other administrative tasks like accounting, tax preparation, and that sort of thing.

(Test., 11–1–95, at 22.) In his deposition in 2003, Mr. Benner testified:

Mr. Trimmer can perform the job of garage supervisor with his impairments according to Dr. Boal. If Dr. Boal's esti-

mates of his physical capabilities is what we are to be adhering to, Mr. Trimmer's abilities fall well within that to be able to perform the duties of a garage supervisor. . . . There is not a lesser variety of garage supervisor. . . . Frankly, he's been doing the job. In my mind, he's demonstrated the ability to perform this position according to his own testimony.

(Dep. Benner, 7–8–03, at 19.)

This case is unusual in utilizing vocational experts because the evidence presented here was not speculative but, rather, irrefutable. Here, the WCJ needed no additional evidence to *infer* earning capacity for an impaired garage supervisor; Claimant *is* an impaired garage supervisor, and vocational experts for both Claimant and Employer agreed that $18,730 is a "conservative" and "fair number" for his earnings. (WCJ Decision 3/22/04, FOF ¶ 25(g, h), 26(k).)

There was substantial evidence to support the WCJ's finding that Claimant's physical limitations do not affect his ability to perform the job. Because Claimant is self-employed, he does not receive wages from a third party, which is why it was necessary to impute his earning ca-

pacity. Garage supervisors in his geographical area have an annual earning capacity of $18,730 and Claimant, regardless of his impairments, has been actually performing the job of garage supervisor. Both the WCJ and the Board have valiantly attempted to comply with this Court's repeated remands but, nevertheless, continue to reach this determination. Consequently, because the majority does not agree with this outcome, notwithstanding the expert testimony found credible, it is now taking the determination out of the prerogative of the WCJ and the Board. While I agree that continuing to send this case back to the WCJ and the Board is unnecessary and unproductive, I do not agree that we should substitute our understanding of the position of garage supervisor, and Claimant's ability to perform the work, for that of the experts found credible by the WCJ. Accordingly, I would affirm the decision of the Board.