Robert APPLEBY, Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (FRANKLIN TOWNSHIP), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 15, 1998.

Decided Oct. 23, 1998.

Thomas S. Cook, Harrisburg, for petitioner.

R. Burke McLemore, Harrisburg, for respondent.

Before McGINLEY and SMITH, JJ., and JIULIANTE, Senior Judge.

McGINLEY, Judge.

Robert Appleby (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed a Workers' Compensation Judge's (WCJ) denial of Claimant's petition for reinstatement.

Claimant was employed as a volunteer fire fighter for Franklin Township (Employer) when he suffered a work-related injury on January 31, 1990. Claimant and Employer stipulated to the following facts:

3. A Notice of Compensation Payable was issued dated March 14, 1990 setting forth an average weekly wage of $419.00 per week. This average weekly wage was based upon the Statewide Average Weekly wage at the time of Claimant's injury as Claimant was injured while pursuing his duties as a volunteer fireman. The weekly compensation rate was set out as $279.33 per week.

4. Claimant's average weekly wage for his regular employment as a plumber was $276.92 per week.

5. Claimant was paid total disability payments in the amount of $279.33 per week from February 1, 1990 through September 30, 1990.

6. On October 1, 1990, Claimant returned to work, still under his work-related disability and at a loss of wages. Thereafter, Defendant continued to pay Claimant's partial disability benefits through November 23, 1991, based upon Supplemental Agreements executed by the Claimant and thereafter filed with the Bureau. On December 26, 1991, the Claimant executed a Supplemental Agreement ... resulting in a suspension of benefits. Benefits have continued to be suspended from November 21, 1991 up to and including the present time.

7. Claimant continued to work, still under his work-related disability, and at a loss of earnings measured from his average weekly wage based upon his duties as a volunteer fireman until September 1, 1993. Claimant ceased to have a loss of earnings as to his employment as a plumber with Appleby Plumbing and Heating on November 23, 1991 when the Claimant's average weekly wage exceeded his average weekly wage from Appleby Plumbing and Heating as of the date of his injury, January 31, 1990.

. . . .

27. From February 1, 1990 through November 23, 1991, Claimant was paid total disability and partial disability benefits utilizing his average weekly wage as a volunteer fireman, which was at the rate of $419.00.

28. The Claimant received his last payment of workers' compensation benefits effective December 26, 1991, from the date of the issuance of the check for payments covering the time period from June 23, 1991, through November 23, 1991.

29. From November 23, 1991 through September 1, 1993, Claimant was paid from Mercy Hospital of Naticoke, $7.65 per hour, for an average of 40 hours per week.

30. From September 1993 through to the present, Claimant has been receiving $10.09 per hour from Mercy Hospital of Nanticoke for an average of 40 hours per week.

Stipulations of Fact, April 27, 1995, Paragraphs 3–7 and 27–30 at 1–2 and 47; Reproduced Record (R.R.) at 43a–44a and 47a.

On November 19, 1993, Claimant petitioned for reinstatement of benefits alleging that Employer "failed to pay partial disability benefits due and owing." Reinstatement Petition, November 19, 1993, at 1; R.R. at 1. Employer denied the allegations. At hearing no one testified. The WCJ made the following pertinent findings of fact:

3. The issue in this matter is whether Claimant is entitled to partial disability

benefits or whether Claimant's benefits should be suspended when Claimant who was injured as a volunteer fireman returns to employment earning more money than he was earning in his occupation as a plumber at the time of his injury as a volunteer fireman but less than the average weekly wage computed under Section 601(b) of the Act.

4. After a careful review of the record and arguments submitted by both parties, this Judge finds that Claimant's benefits should have been suspended as of November 23, 1991. On November 23, 1991 Claimant returned to work earning $306.00 per week. This amount exceeded what Claimant was earning in his occupation as a plumber at the time of his injury with the volunteer fire department. While Section 601(b) of the Act provides that Claimant's wages shall be at least equal to the statewide average weekly wage for the purpose of computing his compensation, Pennsylvania is considered a wage loss state and when Claimant on November 23, 1991 returned to work earning more money than he was earning in his occupation as a plumber at the time of his injury, he was no longer suffering a wage loss as a result of his work injury. Therefore, Claimant's benefits should have been suspended.

WCJ's Decision, July 24, 1996, Findings of Fact Nos. 3 and 4. The WCJ denied the reinstatement petition and suspended benefits as of November 23, 1991.

The Board affirmed and concluded, "the presumption that allowed Claimant to receive disability benefits based upon statewide average weekly wage does not apply when there is no longer any loss of earnings caused by the injury sustained while working as a volunteer firefighter." Board's Decision, March 13, 1998, at 5–6.

■ On appeal Claimant contends that the WCJ erred as a matter of law in the application and interpretation of Section 601 of the Worker's Compensation Act (Act) [1], 77 P.S.

§ 1031.[2] To establish the right to reinstatement of workers' compensation benefits following a suspension a claimant must demonstrate: (1) that through no fault of his own his earning power is once again adversely affected by his disability; and (2) that the disability which gave rise to his original claim continues.

Initially, Claimant contends that the statutory language of Section 601 of the Act, 77 P.S. § 1031 is clear and unambiguous and entitles him to partial disability benefits. Specifically, Claimant asserts that his partial disability benefits should be calculated upon the presumed Statewide Average Weekly Wage of $419.00 and not upon his actual average weekly wage of $306.00.

Section 601 of the Act, 77 P.S. § 1031 provides:

(a) In addition to those persons included within the definition of the word "employe" as defined in section 104, "employe" shall also include:

(1) members of volunteer fire departments or volunteer fire companies, ... who shall be entitled to receive compensation in case of injuries received while actively engaged as a fireman ....

(2) all members of volunteer ambulance corps of the various municipalities who shall be and are hereby declared to be employees of such municipality for the purposes of this act who shall be entitled to receive compensation in the case of injuries received while actually engaged as ambulance corpsman or while going to or returning from any fire ....

....

(b) In all cases where an injury which is compensable under the terms of this act is received by an employe as defined in this section, there is an *irrebuttable presumption* that his wages shall be at least equal to the Statewide average weekly wage for the purpose of computing his compensation

---

1. Act of June 2, 1915, P.L. 736, *as amended.*

2. This Court's review is limited to a determination of whether constitutional rights were violated, whether an error of law was committed and whether necessary findings of fact are supported

by substantial evidence. *Boehm v. Workmen's Compensation Appeal Board (United Parcel Services),* 133 Pa.Cmwlth. 455, 576 A.2d 1163 (1990).

under sections 306 and 307 (footnotes omitted and emphasis added).

In *New Bethlehem Volunteer Fire Co. v. Workmen's Compensation Appeal Board (Kemp)*, 654 A.2d 267, 269 (Pa.Cmwlth.1995), Daniel Kemp (Kemp) was injured in the course of his duties as a volunteer fireman. "At the time of his injury, Kemp was an employee of Ti–Brook, Inc., a local manufacturing company, with an average weekly wage of $426.93." *Id.* at 268. Pursuant to a notice of compensation payable, Kemp received total disability benefits in the amount of $290.67 per week.[3] On April 13, 1992, Kemp petitioned to increase his weekly disability benefits in the amount of $862.93.[4] The referee denied the petition and concluded that Section 601 of the Act guaranteed a volunteer fireman "at minimum, weekly disability benefits equivalent to the average worker in the Commonwealth." *Id.* at 268. The Board reversed and concluded that Kemp was entitled to both the Statewide Average Weekly Wage and his weekly wage from his employment with Ti–Brook.[5]

On appeal this Court reviewed Section 601 of the Act and interpreted the term "irrebuttable presumption":

> The statutory language is clear that this section applies only to volunteer firemen, injured in the scope of his/her duties. Further, the language is equally explicit that this section does nothing more than create an irrebuttable presumption that any volunteer fireman, injured in the line of duty as a volunteer fireman, is guaranteed to receive *at minimum* the statutory minimum wage. Therefore, the Statutory Construction Act confines us to the words of the statute, and no outside material may be used in interpreting the statute.
>
> . . . .
>
> The Statutory Construction Act directs that when a court is attempting to interpret legislation, there is a presumption that the legislature did not intend a result

that is absurd, impossible of execution, or unreasonable. [R]eading Sections 601 and 309(e) to allow a volunteer fireman to receive worker's compensation benefits based on the presumed weekly wage for a job that he does not get paid for, while at the same time receive benefits based on the salary from his paying job is unreasonable, if not absurd. Therefore, we hold that the two statutes are irreconcilable. Accordingly, Section 309(e) states the general rule of aggregation, but *Section 601 states an exception to that rule, as a person who performs the task of volunteer fire fighting as well as working a primary job is not in a concurrent employment situation.*

> It is apparent that the legislative intent of Section 601 is that should a volunteer fireman, who is injured in the line of duty, not otherwise be entitled to benefits or only entitled to an amount less than the presumed average weekly wage, the statute ensures that he/she does not receive workers' compensation benefits in an amount less than the statewide average. (emphasis in the original and added and citations omitted).

*Id.* at 269–70.

■ We believe that the rationale of *New Bethlehem* controls the current controversy. Here, there is no dispute that Claimant's salary from his paying job was $276.92 per week when he was injured working as a volunteer fireman. Pursuant to the notice of compensation payable Claimant received compensation benefits in the amount of $279.33 per week, based upon the statutory Statewide Average Weekly Wage of $419.00. The parties stipulated that on November 23, 1991, Claimant returned to his pre-injury job as a plumber and earned a weekly wage of $306.00 per week, an amount that exceeded his weekly pre-injury wage of $276.00, but less than the Statewide Average Weekly Wage. We hold that Claimant's work-related

---

3. This amount was based upon the 1991 Statewide Average Weekly Wage of $436.00.

4. This amount was arrived at by aggregating Kemp's average weekly wage at Ti–Brook and the statewide average weekly wage.

5. The Board determined that it was constrained to read Section 601 with Section 309(e) of the Act, 77 P.S. § 582(e) (addressing payment of workers' compensation benefits in cases of concurrent employment).

injury as a volunteer fireman ensures him under Section 601 of the Act to the irrebuttable presumption that he would receive at minimum the Statewide Average Weekly Wage of $419.00. Because Claimant's average weekly wage was less than the statewide average weekly wage, he continues to suffer a loss of earning power. The WCJ erred when he denied Claimant's reinstatement petition and suspended benefits as of November 23, 1991.

Accordingly, we reverse the WCJ and the Board.

### ORDER

AND NOW, to wit this 23rd day of October, 1998, the order of the Workers' Compensation Appeal Board in the above-captioned matter is reversed and Robert Appleby's partial disability benefits are reinstated.