Charles A. TRIMMER, Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (MONAGHAN TOWNSHIP), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 15, 1999.
Decided April 21, 1999.

Gregory R. Reed, Harrisburg, for petitioner.

Lawrence F. Barone, Harrisburg, for respondent.

Before SMITH, J., KELLEY, J., and MIRARCHI, Jr., Senior Judge.

SMITH, Judge.

Charles A. Trimmer petitions for review of a Workers' Compensation Appeal Board (Board) order that affirmed a decision of the Workers' Compensation Judge (WCJ) to grant Monaghan Township's (Employer) petition to suspend Trimmer's benefits and to dismiss Employer's petition to modify Trim-

mer's benefits. Trimmer contends that the WCJ made arbitrary and capricious factual findings and that the Board erred as a matter of law in concluding that Employer met its burden of proof.

## I

Prior to October 30, 1989, Trimmer was both a solo mechanic at his own automobile repair business and a volunteer firefighter for Employer. On that date, Trimmer sustained injuries to his right leg, left ankle and head while acting as a volunteer firefighter for Employer, and thereafter he began receiving total disability benefits pursuant to a notice of compensation payable. Trimmer maintained his automobile repair business but hired two employees and moved into a supervisory role. In February 1995, Employer filed a petition to modify and suspend Trimmer's benefits as of January 6 of that year, alleging that Trimmer had sufficiently recovered to resume his pre-injury employment without a loss of earnings and that Trimmer was performing substantial work as a garage supervisor and automobile mechanic.

The WCJ suspended Trimmer's benefits in a decision that was based principally on the testimony of Employer's medical expert, Doctor Richard Boal, who had examined Trimmer on January 5, 1995. The doctor conceded that Trimmer was not fully recovered, but he believed that Trimmer could perform mechanical work. This conclusion was based, in part, on the doctor's observation that Trimmer had calluses and embedded grease in his hands, which indicated that he was in fact performing mechanical work. Dr. Boal's observations were buttressed by the testimony of a surveillance agent hired by Employer who observed and videotaped Trimmer moving about his business, using hand tools and looking under automobile hoods without noticeable impairment. The surveillance agent did not observe Trimmer crawling, kneeling or squatting at any time and could not discern what he was doing to the vehicles. Employer also presented Trim-

mer's 1994 federal income tax return which showed that Trimmer's business had a gross income exceeding $96,000 that year. The return, however, showed negative net profits from the business.

In his testimony before the WCJ, Trimmer denied performing the work of an automobile mechanic at his business but admitted performing some duties associated with mechanical repairs including supervising employees. Trimmer testified that residual limitations from his work-related injury require him to keep two employees on staff and that after paying their wages his business produces no net profits, leaving him without any income from the business. He stated that his personal and business funds are co-mingled in the same account. Among other evidence, Trimmer supported his assertion of continued disability in his right hip, leg and foot with a medical report from Dr. Jay J. Cho dated December 29, 1995 in which the doctor opined that Trimmer's physical restrictions prevent him from performing full duty as a mechanic.

Both sides presented vocational testimony to establish Trimmer's current earning power. Employer's vocational witness, Rodney Benner,[1] stated that garage supervisors in comparable areas with duties similar to those performed by Trimmer at his business earned an average of $18,730 annually. Mr. Benner's testimony was based solely on a market survey that did not consider any physical limitations that Trimmer may suffer. Trimmer presented the testimony of John S. Rister, a board-certified vocational expert. He affirmed that Mr. Benner's figures accurately reflect the earning power of an unimpaired garage supervisor in the area, but he explained that the figures do not accurately reflect the earning power of a garage supervisor with physical limitations and that an individual with the physical limitations that Dr. Boal ascribes to Trimmer is not employable as a garage supervisor. The WCJ relied on both vocational witnesses and found that Trimmer has an annual earning capacity of at least $18,000 based on the work he is

1. Employer initially offered Mr. Benner as a vocational expert, but in a later hearing Employer explained that Mr. Benner was not introduced as an expert but only as a factual witness based on a labor market survey that he conducted.

currently performing. The WCJ concluded that Employer met its burden of proof pursuant to *Rossi v. Workmen's Compensation Appeal Board (City of Hazleton)*, 164 Pa. Cmwlth. 233, 642 A.2d 1153 (1994). The Board determined that the WCJ's factual findings were supported by substantial and competent evidence and that the WCJ properly relied on *Rossi*.[2]

## II

▮▮▮ The Court will first address Trimmer's argument that Employer failed to meet its burden of proof as a matter of law; Trimmer contends that this Court's decision in *Rossi* is distinguishable and that the Board erred in affirming the WCJ's reliance upon it. An employer meets its burden in a suspension proceeding when the employer establishes that a claimant has recovered all of his or her earning power. *See Harle v. Workmen's Compensation Appeal Board (Telegraph Press, Inc.)*, 540 Pa. 482, 658 A.2d 766 (1995). Where a claimant has returned to work, the employer is not required to establish that the claimant's current earnings match his or her pre-injury earnings; it is sufficient to establish that the claimant's earning power is no longer affected by the work-related injury. *Id.* However, if the evidence establishes only that the claimant has regained some, rather than all, of his or her pre-injury earning capacity then benefits are modified rather than suspended and the claimant will continue receiving a portion of his or her original benefits. *United Cerebral Palsy v. Workmen's Compensation Appeal Board (Emph)*, 543 Pa. 544, 673 A.2d 882 (1996).

In *Rossi* this Court was presented with an appeal from the partial grant of a claim petition. The claimant was injured while working as a firefighter and after the injury began work at an automobile garage. The referee awarded the claimant total disability benefits until his work at the garage began and partial disability thereafter. In reaching this conclusion, the referee rejected the testimony presented by the claimant that he earned no income from his work at the garage and relied instead on expert vocational testimony to establish the claimant's earning power. In response to the claimant's argument that the referee erred in relying on the vocational testimony, this Court held:

> The record contains no evidence of Claimant's actual earnings at the garage; and since the testimony of Employer's vocational expert regarding wages in the Hazelton area during the relevant time frame constitutes substantial evidence to support the referee's finding of fact regarding Claimant's earning power, the referee did not err in computing Claimant's compensation based on the earning power established by Employer's vocational expert.

*Id.*, 642 A.2d at 1157. The Board and the WCJ correctly relied on *Rossi* for the proposition that the earning power of a working claimant can be established by expert vocational testimony based on wages paid for the same work in the geographic area during the relevant time frame where there is no credible evidence of the claimant's actual earnings.

▮▮▮ Trimmer argues that *Rossi* is distinguishable because that case involved a claim petition where the claimant bore the burden of proof; in contrast, this case involves a petition for modification and suspension where Employer bears the burden of proof.[3]

---

**2.** Where both sides present evidence, this Court's review of a WCJ's factual findings is limited to determining whether the necessary findings are supported by substantial evidence. *See Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986); *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth. 436, 550 A.2d 1364 (1988). It is not this Court's function to reweigh all the evidence and to determine whether the WCJ made the most reasonable and probable findings that could have been rendered. *Bethenergy Mines v. Workmen's Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 612 A.2d 434 (1992).

**3.** Trimmer suggests numerous other grounds for distinguishing his case from the Court's *Rossi* opinion and from the Supreme Court's *Harle* opinion. The Court is not persuaded that any of the identified differences render the rules of law announced in those opinions inapplicable to the instant case. The most noteworthy distinction Trimmer advances is that Mr. Benner did not provide the expert vocational testimony required by *Rossi*. Regardless, the factual testimony provided by Mr. Benner is sufficient to the extent it was confirmed by the expert opinion of Mr. Riser. Trimmer also asserts that this Court's opinion in *Teamsters Local 384 v. Workmen's Compensation Appeal Board (Hill)*, 136 Pa.Cmwlth. 426,

Recently in *Capuano v. Workers' Compensation Appeal Board (Boeing Helicopter Co.)*, 724 A.2d 407 (Pa.Cmwlth.1999), however, this Court was presented with a petition for review from the grant of an employer's petition for modification and suspension that alleged the claimant had returned to work at an undetermined earning power. The Court held that the claimant's imputed earning capacity as established by expert vocational testimony could provide the substantial evidence necessary to meet the employer's burden to prove that the claimant has actually recovered his or her earning power. Thus the principle enunciated in *Rossi* may be applied to sustain the employer's burden in modification and suspension petitions. To the extent the expert vocational testimony and other evidence presented before the WCJ is sufficient to meet the requirements of *Rossi*, that case controls the outcome of this matter.

### III

■ Trimmer also contends that vital factual findings in the WCJ's decision were made arbitrarily and capriciously. The first factual finding that Trimmer challenges is the WCJ's statement in Finding No. 7 that Dr. Boal examined Trimmer on January 6, 1996. The record reflects that Dr. Boal's examination actually occurred a year earlier on January 6, 1995. Trimmer contends that this is significant because the WCJ's error bolstered Dr. Boal's credibility, which was essential to the outcome of the case. An examination of the WCJ's decision and order as a whole, however, reflects that her use of the 1996 date in Finding No. 7 is merely a typographical error. Later, in the order the WCJ used the correct date of January 6, 1995 to set the effective date for the suspension of Trimmer's benefits. Because the error was merely typographical and the WCJ was aware of the correct date, the error was harmless.

■ Trimmer next challenges the WCJ's finding that, although Trimmer is not fully recovered, he does not have any residual disability that would restrict or limit the performance of his pre-injury work as an automobile mechanic/garage supervisor. In making this finding the WCJ credited Dr. Boal's opinion over Trimmer's expert medical evidence and over Trimmer's testimony. It is well established that the WCJ, as the ultimate factfinder, may accept or reject any testimony, including the medical opinion of one expert witness over that of another and that this Court is bound by any credibility determinations made by the WCJ. *New Enterprise Stone & Lime v. Workmen's Compensation Appeal Board (Baird)*, 124 Pa. Cmwlth. 257, 555 A.2d 974 (1989); *Wynn v. Workmen's Compensation Appeal Board (Department of Transportation)*, 77 Pa. Cmwlth. 631, 466 A.2d 769 (1983). Thus this Court must accept the WCJ's finding that Trimmer has the physical capabilities and impairments ascribed to him in Dr. Boal's opinion.

■ However, Trimmer correctly argues that the record does not support the WCJ's determination that he has an $18,000 annual earning capacity. All medical testimony presented before the WCJ agreed that Trimmer has not fully recovered from his work-related injury, and the WCJ so found. Dr. Boal testified that Trimmer would have to be able to change positions and sit as needed and should not be frequently crawling or squatting. Nevertheless, the vocational testimony in this case establishes only an $18,000 annual earning capacity for *unimpaired* garage supervisors, and the only expert vocational testimony in the record refutes the conclusion that an individual with Trimmer's physical limitations has the same earning capacity as an unimpaired garage supervisor. Thus the record does not support the WCJ's finding that Trimmer has an $18,000 annual earning capacity or the conclusion that Trimmer has regained all of his pre-injury earning capacity,[4] and the WCJ erred in suspend-

---

583 A.2d 503 (1990), controls this case and requires Employer to establish the availability of work that Trimmer can perform. The WCJ, however, found that Trimmer is currently employed at his own business, and thus the avail-

ability of work Trimmer can perform has been established.

4. Trimmer was working as a volunteer firefighter for Employer when he was injured, and his busi-

ing Trimmer's benefits. *United Cerebral Palsy.* In light of this result, the Court need not address Trimmer's remaining arguments concerning the evidence relied upon by the WCJ in determining Trimmer's earning power. For the foregoing reasons, the order of the Board is vacated, and the case is remanded for the WCJ to consider Employer's petition to modify Trimmer's benefits and to determine Trimmer's earning capacity in light of his physical restrictions as established by the testimony of Dr. Boal and other relevant and credible evidence of record.

### *O R D E R*

AND NOW, this 21st day of April, 1999, the order of the Workers' Compensation Appeal Board is vacated, and the matter is remanded in accordance with the attached opinion.

Jurisdiction relinquished.

ness produced income less than the statewide average; therefore the relevant pre-injury earning power in this case is the statewide average weekly wage in effect at the time of Trimmer's injury. *See Appleby v. Workers' Compensation Appeal Board (Franklin Township),* 719 A.2d 843

(Pa.Cmwlth.1998). Even if the record supported the WCJ's finding, it is unclear whether an $18,-000 annual earning capacity is sufficient to establish full recovery of an earning power equal to the 1989 statewide average weekly wage.