# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rachel Tipton, n/b/m Rachel Ohl,  :
                        Petitioner  :
                                        :
          v.  :    No. 741 C.D. 2015
                                          :    Submitted: November 13, 2015
Workers' Compensation Appeal  :
Board (Pleasant Township),  :
                      Respondent  :

BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**            **FILED: January 5, 2016**

Rachel Tipton, n/b/m, Rachel Ohl (Claimant), petitions for review from an order of the Workers' Compensation Appeal Board (Board) that affirmed a Workers' Compensation Judge's (WCJ) decision granting Pleasant Township's (Employer) modification petition under the Workers' Compensation (WC) Act (Act).[1] Claimant argues the Board erred in determining she was not fully disabled when she is unable to return to her pre-injury position as a volunteer fire fighter. She also asserts her WC benefits may not be modified based on a labor market survey (LMS) when she was unemployed at the time of her injury. In addition, she contends the LMS preparer was not qualified to submit expert testimony in support of the modification petition. Upon review, we affirm.

---

[1] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§1-1041.1, 2501-2708.

## I. Background

In 2009, while working for Employer as a volunteer fire fighter, Claimant sustained a work injury to her right shoulder. She receives WC benefits[2] pursuant to Section 601 of the Act, 77 P.S. §1031.[3] At the time of her injury, Claimant was a full-time college student.

Employer filed a petition to modify Claimant's compensation benefits, alleging work is available to Claimant within her capabilities based on a LMS. Claimant denied the material allegations. Hearings before a WCJ followed.

In support of its petition, Employer presented the deposition testimony of Brian F. Jewell, M.D., a board certified orthopedic surgeon (Employer's Physician). He performed an independent medical examination (IME) and a functional capacity evaluation (FCE). He indicated Claimant was able to walk, stand or sit for up to eight hours. He testified she did not show evidence of atrophy in the neck or shoulder, or a loss of sensation in her right hand or forearm. WCJ Op., 6/28/13, Finding of Fact (F.F.) No. 5. He opined Claimant was capable of using her right arm, but would require lifting and use restrictions. Employer's Physician further opined Claimant could perform the light-duty positions listed in the LMS he reviewed. Certified Record (C.R.), Emp'r. Ex. 4, Deposition of Brian F. Jewell, M.D., (Jewell Dep.), 7/6/12, at 36-40, 44.

---

[2] This Court addressed the amount of compensation to which Claimant is entitled as a volunteer fire fighter in a related decision. See Tipton v. Workers' Comp. Appeal Bd., (Pleasant Twp.) (Pa. Cmwlth., No. 165 C.D. 2015, filed December 7, 2015) (unreported). There, we upheld Claimant's compensation rate for total disability as $557.33 per week. Id.

[3] Added by section 15 of the Act of December 5, 1974, P.L. 782.

Employer also presented the deposition testimony of Paula Tabella, a Vocational Case Manager with Compass Rehabilitation since 1983 (Vocational Expert). She performed a LMS and earning power assessment regarding Claimant. Based on her review of the IME and a vocational interview with Claimant, Vocational Expert identified five available jobs for Claimant within her capabilities.

Specifically, she identified the following positions: (1) K-Mart (cashier at $7.25 per hour, 30 hours per week); (2) Choice Cigarettes Outlet (cashier/clerk at $7.25 per hour, 25 hours per week); (3) AT&T (sales consultant at $10.60 per hour, 40 hours per week); (4) Wood Forest Bank (in-store retail banker, at $8.00 per hour, 40 hours per week); and, (5) Bob Evans (hostess/cashier at $7.50 per hour, 20 hours per week). F.F. No. 6. Vocational Expert acknowledged the positions she located are not the types of positions aligned with Claimant's career goals or in her area of study at college.

In rebuttal, Claimant testified on her own behalf and submitted the deposition testimony of Megan Helen Cortazzo, M.D., who is board certified in physical medicine and rehabilitation and pain medicine (Treating Physician). Treating Physician managed Claimant's pain associated with her shoulder injury.

Based on her examination, Treating Physician found Claimant had very limited range of motion and her shoulder capsule was frozen, such that the joint did not glide along the capsule. With injections as a lubricant, Claimant would be able to move her shoulder. She testified that while injections improved Claimant's range of motion, they did not relieve her pain. Treating Physician

3

advised Claimant she may have chronic pain; while Treating Physician would not be able to "fix [Claimant]," she could assist with pain management. F.F. No. 7.

Treating Physician testified Claimant recently underwent prolotherapy;[4] however, she did not know the results at the time she testified. She explained that prolotherapy normally involves a series of injections every four to six weeks. If Claimant experiences relief, the process will be repeated. Treating Physician opined Claimant was at maximum medical improvement, and no other therapies or treatments would improve Claimant's situation.

Treating Physician also opined Claimant would have difficulty performing some of the jobs indicated by the LMS because of their repetitive nature. She explained that while the jobs appear to be within Claimant's capabilities, the cashier positions would require Claimant to use her right arm on a daily repetitive basis. Of the five positions, she opined the bank teller position was within Claimant's capabilities. C.R., Clmt. Ex. 2, Deposition of Megan Helen Cortazzo, M.D. (Cortazzo Dep.), 12/7/12, at 21. She opined Claimant could probably perform light-duty positions, as long as the duties were not repetitive and did not involve lifting over 20 pounds with her injured arm.

Claimant testified regarding her injury and her limitations. She received three surgeries to address shoulder stability. Following each surgery, she underwent physical therapy. The most recent surgery corrected the stability issue.

_____

[4] Prolotherapy is an experimental treatment where a proliferant is injected into the injured tissue to create an inflammatory process, with the goal of that process to lead to repair of the surrounding tissues. WCJ Op., 6/28/13, Finding of Fact (F.F.) No. 7.

Claimant testified she is not able to return to a volunteer fire fighter position because, with her reduced use of her right arm, she cannot control the hose or wear the necessary gear. She testified she experiences pain in any position, standing, sitting or walking. Her most comfortable position is lying down.

Claimant testified she was not looking for work and that she is a full-time student. She did not apply to any of the positions listed in the LMS because they were not consistent with her career goals. She testified she would not be able to complete her education if she was required to become employed. She was scheduled to graduate from the University of Pittsburgh-Bradford in May 2013. Claimant has not worked since her injury.

Based on the evidence submitted, the WCJ granted Employer's modification petition. The WCJ determined Employer met its burden of proving a change in Claimant's condition. The WCJ found Claimant is not totally disabled, as she is capable of returning to work with light-duty restrictions. In so finding, the WCJ relied on the medical opinions of Employer's Physician and Treating Physician that Claimant could perform light-duty work. The WCJ also relied on the FCE that reflected Claimant can perform sedentary and light-duty work.

The WCJ also determined Employer had standing to pursue a LMS and earning power assessment modification under Section 306(b)(2) of the Act, 77 P.S. §512(2), added by the Act of June 25, 1996, P.L. 350. The WCJ found work with Employer was not available to Claimant within her restrictions. She further found Claimant was not released to work as a volunteer fire fighter.

5

The WCJ credited Vocational Expert's testimony. She rejected Claimant's challenge to her qualifications as an expert, explaining such objections were waived by failing to raise them at hearing or deposition.

As to Claimant's earning power, the WCJ found there is work generally available within Claimant's geographic area that falls within her vocational and physical capabilities. Of the five positions identified by Vocational Expert, the WCJ found Claimant was best suited for the bank teller position, which paid $8.00 per hour for up to 40 hours a week ($8.00 x40=$320.00). Using the Statewide average weekly wage (AWW) for 2009 of $836.00, the WCJ reduced Claimant's wages by $320.00 per week, ($836.00-$320.00= $516.00). This resulted in a modified compensation rate of $344.00 per week ($516.00 x .666 = $343.996). Claimant appealed to the Board.

Ultimately, the Board affirmed, reasoning Claimant was capable of performing substantial, gainful employment within her restrictions. The Board agreed the Act did not preclude Employer from modifying Claimant's benefits as a volunteer fire fighter in the same manner as if her benefits were based on wages she earned while otherwise employed. Bd. Op., 4/16/15, at 6. It explained the WCJ's finding that Claimant was not fully disabled was supported by the testimony of both medical experts who opined Claimant could perform sedentary to light-duty work. As a result, Claimant was entitled to partial disability benefits. After noting Vocational Expert was qualified as an expert through the Department of Labor and Industry's (Department) Bureau of Workers' Compensation, the Board concluded Claimant waived any objection to her testimony.

Claimant now petitions for review.

## II. Discussion

On appeal,[5] Claimant argues the Board erred in determining Employer proved she was not fully disabled so as to prevail on its modification petition. Claimant asserts her benefits may not be modified unless she is returned to her regular duties as a fire fighter, without restrictions. She contends that, as a volunteer fire fighter who was not employed at the time of her injury, she is not subject to Section 306(b)(2) of the Act. She also challenges the admissibility of Vocational Expert's testimony in an expert capacity.

## A. Partial Disability

In order to support a modification of WC benefits, an employer "must show that a claimant's 'disability has ended or has been reduced[,] and that work is available to the claimant and the claimant is capable of doing such work.'" Burrell v. Workers' Comp. Appeal Bd. (Phila. Gas Works & Compservices, Inc.), 849 A.2d 1282, 1287 (Pa. Cmwlth. 2004) (quoting Celio v. Workmen's Comp. Appeal Bd. (Canonsburg Gen. Hosp.), 531 A.2d 552, 553 (Pa. Cmwlth. 1987)). To meet its burden of proof under Section 306(b)(2) of the Act (relating to earning power), we explained "an employer must only show that the claimant is able to perform her previous work or that she can engage in any other 'substantial gainful employment' in her employment area." Id. (citations omitted).

---

[5] Our review is limited to determining whether an error of law was committed, whether necessary findings of fact were supported by substantial evidence, and whether constitutional rights were violated. Dep't of Transp. v. Workers' Comp. Appeal Bd. (Clippinger), 38 A.3d 1037 (Pa. Cmwlth. 2011).

In pertinent part, Section 306(b)(2) of the Act provides as follows:

(2) 'Earning power' shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the [D]epartment, private job placement agencies and advertisements in the usual employment area. Disability partial in character shall apply if the employe is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth … In order to accurately assess the earning power of the employe, the insurer may require the employe to submit to an interview by a vocational expert who is selected by the insurer and who meets the minimum qualifications established by the department through regulation….

77 P.S. §512(2). Construing Section 306(b)(2), our Supreme Court reasoned:

Breaking this section into its component parts, we observe that 'earning power' is calculated from the 'work the employe is capable of performing.' Such calculation 'shall be based upon expert opinion evidence,' which evidence 'includes job listings with the agencies of the [Department], private job placement agencies[,] and advertisements in the usual employment area.' Partial disability 'shall apply' if the claimant is able to either[:] (1) work his pre-injury job; or (2) 'engage in any other kind of substantial gainful employment which exists' in the relevant geographic area and which takes into consideration several factors, namely, the claimant's residual ability, education, age, and work experience.

Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap), 81 A.3d 830, 841-42 (Pa. 2013) (citations omitted) (emphasis added). An employer may obtain a modification of a claimant's WC benefits based on evidence of her earning power

alone.  Anderson v. Workers' Comp. Appeal Bd. (F.O. Transp. & Uninsured Emp'r. Guar. Fund), 111 A.3d 238 (Pa. Cmwlth. 2015).

Here, Employer established Claimant's earning power through Vocational Expert's testimony and the LMS she prepared.  Although Claimant is incapable of performing duties as a volunteer fire fighter, both medical experts agreed Claimant is capable of performing light-duty work with restrictions.  F.F. Nos. 5, 7; C.R., Jewell Dep. at 36-40; Cortazzo Dep. at 19-22.  Treating Physician opined Claimant was capable of performing some light-duty work provided the position did not require repetitive motions of her right arm.  Cortazzo Dep. at 22. She agreed the bank teller position was suitable and consistent with Claimant's abilities.  F.F. No. 7; Cortazzo Dep. at 21.  Employer's Physician opined Claimant could perform all five jobs included in the LMS.  Jewell Dep. at 44.

The WCJ's finding that Claimant is not totally disabled is supported by the record.  The WCJ found Claimant is capable of performing the bank teller position, which would yield $320.00 per week.  F.F. No. 11(j); Concl. of Law No. 3. Those earnings are less than the Statewide AWW of $836.00 to which Claimant is entitled as a volunteer fire fighter.  As a result, the potential wages from her assessed earning power are deducted from her pre-injury wages resulting in a modified compensation rate.

We reject as untenable Claimant's contention that she is entitled to total disability benefits until she is able to return to her pre-injury volunteer position. Benefits are subject to modification to reflect changes in physical or mental

9

capacities post-injury. Claimant cites no applicable law supporting her policy-based exception for volunteer fire fighters from modification petitions.

That the bank teller position is not in the same industry in which Claimant pursued her degree or the same industry in which she was engaged when injured does not mean the position is not suitable. We recognize Claimant was studying to become a secondary level health and gym teacher before her injury. However, inability to return to work in the same industry does not shield Claimant from modification of benefits when she is able to perform other gainful employment. See Hendry v. Workmen's Comp. Appeal Bd. (Miller & Norford, Inc.), 577 A.2d 933, 934 (Pa. Cmwlth. 1990) (job may be suitable when at lower wage; contention that available jobs in another industry were "degrading" does not render the jobs unsuitable for a claimant).

There is no dispute Claimant did not pursue any of the jobs identified in the LMS. Claimant had an obligation to pursue the identified jobs in good faith. Hendry. Accordingly, the Board properly granted Employer's modification petition.

**B. Applicability of LMS to Volunteers**

Next, Claimant argues her benefits are not subject to modification under Section 306(b) because she is entitled to Statewide AWW for 2009 as a volunteer fire fighter. Her compensation rate is thus set by statute. Section 601 of the Act, 77 P.S. §1031. She also asserts a LMS is not appropriate when she was not employed at the time of her injury and she remains unemployed.

10

There is simply no support for Claimant's position that Section 306(b) does not apply to volunteer fire fighters who were unemployed when injured. Claimant's contention that she is entitled to receive the Statewide AWW for 2009 without further reduction to account for her capabilities is inconsistent with case law. See Trimmer v. Workers' Comp. Appeal Bd. (Monaghan Twp.), 728 A.2d 438 (Pa. Cmwlth. 1999) (claimant fire fighter's benefits subject to modification based on earning power established by vocational expert's testimony); Appleby v. Workers' Comp. Appeal Bd. (Franklin Twp.), 719 A.2d 843 (Pa. Cmwlth. 1998) (claimant fire fighter's partial disability benefits were properly calculated based on the Statewide AWW). These cases show a fire fighter's compensation is calculated by applying other provisions of the Act to the wages presumed under Section 601.

That Claimant is currently unemployed, as she is pursuing academics as a full-time student, does not mean she is incapable of becoming employed. The relevant focus is Claimant's earning *capacity*, not her employment history or intended career path. Phoenixville Hosp.; Hendry.

Vocational Expert identified five jobs that were available and within Claimant's physical restrictions. Reproduced Record (R.R.) at 19a. Treating Physician acknowledged Claimant could perform those jobs, provided they did not involve repetitive arm motions with the right arm, and she noted the bank teller position was the most suitable. Cortazzo Dep. at 21. Claimant's earning power is properly based on her present abilities. That these jobs were not the types of jobs Claimant intended to obtain when she graduates does not mean they are not

11

appropriate for her current skill set and physical restrictions.  <u>Hendry</u>.  Therefore, the WCJ's modification of Claimant's benefits based on the LMS was appropriate.

Claimant is entitled to ongoing WC benefits because her disability (loss of earnings) continues.  Stated differently, she is partially disabled in that she does not currently possess an earning capacity for which she would receive wages equal or greater than the Statewide AWW.  For that reason, Claimant continues to receive WC benefits, albeit at a modified rate, accounting for her partial disability.  See <u>Appleby</u> (acknowledging partial disability for volunteer fire fighter).

### C. Admission of Vocational Expert Testimony

Lastly, Claimant challenges the qualifications of Vocational Expert to offer expert testimony.  Specifically, she argues Employer did not tender Vocational Expert as an expert; therefore, it did not submit "expert" testimony to support the LMS.

Section 306(b)(2) of the Act provides that the insurer "may" require the employee to submit to an interview by a vocational expert approved by the Department "[i]n order to accurately assess the earning power of the employe." <u>Wheeler v. Workers' Comp. Appeal Bd. (Reading Hosp. & Med. Ctr.)</u>, 829 A.2d 730, 734 (Pa. Cmwlth. 2003).  Vocational Expert is approved by the Department. R.R. at 5a, Deposition of Paula Tabella (Tabella Dep.), 6/5/2012.  However, Claimant asserts Vocational Expert's certification and approval by the Department does not qualify her as an expert when Employer did not tender her as an expert at her deposition.  We disagree.

There is no dispute that Vocational Expert possesses the requisite qualifications to perform a labor market survey and submit testimony. Notably, Claimant concedes Vocational Expert was qualified through the Department's Bureau of Workers' Compensation. Pet'r's Br. at 21. Further, Vocational Expert explained her qualifications to serve as an expert during her deposition. There, she testified she was "a qualified vocational expert through the Pennsylvania Bureau of Workers' Compensation and the [Department]." R.R. at 5a. She explained she obtained her certification through the Commonwealth. Id. She performed labor market surveys for over 20 years. Thus, she meets the criteria for a vocational expert. See Marx v. Workers' Comp. Appeal Bd. (United Parcel Serv.), 990 A.2d 107 (Pa. Cmwlth. 2009) (rejecting objection to vocational specialist's labor market survey when preparer qualified as an expert under 34 Pa. Code §123.202(a)).

Moreover, Claimant's contention that she was not given any indication that Vocational Expert was interviewing Claimant in an expert capacity is inconsistent with the record. Relevant here, Vocational Expert identified herself as Employer's expert when she attempted to schedule the vocational interview. R.R. at 8a; see C.R., Emp'r. Ex. 5, Tabella Dep. at Ex. 2. She enclosed a copy of her curriculum *vitae* with the letter, advising that she possessed the minimum qualifications for vocational experts as set forth in the Pennsylvania Code, 34 Pa. Code, Chapter 123. Id. Accordingly, Claimant was on notice of her expert status. This afforded Claimant an opportunity to question Vocational Expert's qualifications prior to the vocational interview, or later, during the deposition when the intent of her deposition, to support the findings in the LMS, was clear.

13

Additionally, Claimant waived any objection to Vocational Expert's qualifications by failing to object on that basis. Claimant's objection to the admission of the LMS as insufficient evidence of Claimant's earning power does not encompass an objection to the preparer's qualifications. See F.F. No. 11(g). Careful review of the transcripts reflects Claimant did not object to the qualifications of Vocational Expert before the record closed.

The strict doctrine of waiver applies to a workers' compensation proceeding. Wheeler; Hinkle v. Workers' Comp. Appeal Bd. (Gen. Elec. Co.), 808 A.2d 1036 (Pa. Cmwlth. 2002); Mearion v. Workers' Comp. Appeal Bd. (Franklin Smelting & Ref. Co.), 703 A.2d 1080 (Pa. Cmwlth. 1997). "The purpose of the waiver doctrine is to ensure that the WCJ is presented with all cognizable issues so that the 'integrity, efficiency, and orderly administration of the workmen's compensation scheme of redress for work-related injury' is preserved." Wheeler, 829 A.2d at 734 (quoting Smith v. Workmen's Comp. Appeal Bd., 670 A.2d 1146, 1149 n.6 (Pa. 1996)). We addressed the timing for an objection to a vocational specialist's qualifications in Wheeler.

There, this Court addressed whether a claimant waived his objections to his employer's vocational expert based on lack of qualifications. In that case, the employer presented the deposition testimony of a vocational counselor. At the time of his deposition, the claimant's counsel did not object to the counselor's qualifications to testify as a vocational expert. The vocational counselor was not approved by the Department. The claimant asserted the lack of Department approval for the vocational counselor's qualifications constituted a basis to

14

challenge the competency of his testimony as to the claimant's earning power. This Court disagreed, holding the claimant had an obligation to object at every stage before the WCJ. Id. The claimant's failure to object at the vocational interview stage, and again at the deposition, constituted a waiver of an objection to his qualifications. Id.

As in Wheeler, here, Claimant did not object to Vocational Expert's qualifications prior to or during the vocational interview. Claimant also did not object to Vocational Expert's qualifications during her deposition or at any time during the hearing. Claimant objected to Vocational Expert's qualifications for the first time in her position statement submitted to the WCJ after the record closed. See F.F. No. 11(f). Claimant thus failed to preserve the objection, and the issue is waived. Wheeler.

### III. Conclusion

For the foregoing reasons, we affirm the Board.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rachel Tipton, n/b/m Rachel Ohl,   :
                  Petitioner   :
  :
         v.   :   No. 741 C.D. 2015
  :
Workers' Compensation Appeal   :
Board (Pleasant Township),   :
                  Respondent   :

# **O R D E R**

**AND NOW**, this 5th day of January, 2016, the order of the Workers'
Compensation Appeal Board is hereby **AFFIRMED**.


_____
ROBERT SIMPSON, Judge