# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Allegheny, : 
                Petitioner : 
                  : 
           v. : No. 570 C.D. 2015 
                  : Submitted: November 25, 2015 
Workers' Compensation Appeal : 
Board (Murphy), : 
                Respondent : 

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**              **FILED: February 4, 2016**

The County of Allegheny (Employer) petitions for review from an order of the Workers' Compensation Appeal Board (Board) that affirmed a Workers' Compensation Judge's (WCJ) decision that denied its termination and suspension petitions. Employer contends the Board erred by determining its medical expert's testimony was incompetent. It also asserts the Board erred in determining the WCJ's error in admitting certain evidence was harmless. Alternatively, Employer seeks a remand to the WCJ to consider Employer's medical expert's opinion. Upon review, we affirm.

## I. Background

Pamela Murphy (Claimant) worked for Employer as a clerk-typist when she sustained strains in both her thumbs as a result of repetitive motion while performing her job duties in October 2009. Employer recognized a "thumb strain" injury in two notices of compensation payable (NCP) issued in 2010.

In December 2012, Employer filed petitions to terminate and suspend compensation (Petitions), alleging that Claimant fully recovered as of April 2012. Employer's Petitions were based on the medical opinion of Trenton Gause, M.D., a board-certified orthopedic surgeon (Employer's Physician).

In 2013, Claimant filed a review petition alleging an incorrect injury description. She alleged the description should be changed to "CMC[1] arthritis/trapezial osteoarthritis of bilateral thumbs." WCJ's Op., 8/27/13 (Review Petition) Finding of Fact (F.F.) No. 1. During the pendency of the litigation, Claimant amended her review petition to a petition seeking approval of a compromise and release agreement (Agreement). The Agreement resolved that no wage loss benefits were payable after May 17, 2013. However, the Agreement did not resolve whether Claimant fully recovered as of April 2012, and so left open other issues in the Petitions. Relevantly, the Agreement did not alter the injury description.

A WCJ held hearings on the Petitions. In support of its Petitions, Employer presented the deposition testimony of Employer's Physician. Employer also presented the deposition testimony of Kate Barkman, the Director of Court Records (Supervisor) regarding Claimant's job duties. Claimant testified on her own behalf at two separate hearings. She also presented two reports prepared by Steven Kann, M.D., an orthopedic surgeon, who operated on Claimant's left thumb twice and once on her right thumb (Treating Physician).[2]

---

[1] The Carpometacarpal "CMC" joint is at the base of the thumb, where the thumb meets the wrist. Reproduced Record (R.R.) at 213a.

[2] Employer objected to the admission of Treating Physician's report based on hearsay. R.R. at 323a.

2

Employer's Physician opined Claimant did not suffer a work-related injury as there was nothing to indicate that the thumb strain was work related. Specifically, he testified "[t]here was nothing at work to suggest that this [Claimant's symptoms] was caused by work." Reproduced Record (R.R.) at 222a. During his testimony, he repeatedly opined "this was not work related." Id. He opined the surgeries were not related to thumb strains, but to arthritis, a degenerative condition. Further, his report stated, "[t]here is nothing in [Claimant's] history to substantiate a causal connection between her work and the onset of her thumb pain. Due to the fact that I do not feel that [her] condition was work-related, I would not impose any restrictions." R.R. at 289a. Employer's Physician also opined as to Claimant's continued complaints of "bilateral thumb pain," that her complaints of pain were "excessive" and out of proportion to her condition. Id. at 242a.

Employer's Physician declined to complete a "Physician's Affidavit of Recovery" because he did not think Claimant's injuries were work-related. R.R. at 225a. When asked to assume she had an injury at work, he testified: "[i]f one hypothetically or to state that these injuries were accepted as strains, the strains in and of themselves would have resolved." Id. Notably, he did not recognize at the time of his deposition that the injury was accepted as a strain.

As to work restrictions, Employer's Physician opined Claimant could return to her pre-injury job, a light-duty position. He recommended lifting restrictions of 20 pounds and stated she should be able to type and use her hands. Based on his observation that she healed well post-surgery, Employer's Physician expressed surprise that Claimant's grip strength and reported pain did not improve.

3

Supervisor testified regarding Claimant's job duties. She explained that although Employer received notice that Claimant was able to return to work in 2012, Claimant did not return to work or contact Employer.

Treating Physician first examined Claimant in 2010 related to wrist pain. In his report, Treating Physician opined Claimant has continued pain and sensitivity in her bilateral thumbs post-operatively. He disagreed with Employer's Physician's opinions that Claimant could perform her pre-injury position. Based on the job description and Supervisor's deposition transcript, he opined Claimant could return to work in a modified position as of January 19, 2012. Specifically, he set forth the following restrictions: no lifting greater than two pounds; no forceful gripping, pinching, grasping; no repetitive motion; and, no typing in either hand. He also restricted Claimant from performing passport work.

Claimant testified as to her condition and her capabilities. She explained she suffered a loss of strength in both hands that made several daily tasks difficult. She experienced greater pain in the left thumb than the right, and continued to feel pain post-surgeries. She did not return to work despite Employer's requests to avoid further damage to her thumbs and the pain her job duties caused. She could not return to pulling sizeable docket books and was unable to press the spacebar on a keyboard with her thumbs. She also could not use a mouse for sustained periods because her thumb would no longer function. She could not perform the phone work of her pre-injury position because the reception for the headset was poor.

4

The WCJ credited Claimant's testimony. He noted her testimony "specifically was very credible and believable in describing the duties of a multi-function clerk and [her] pain in attempting to perform those duties." WCJ's Op., 9/24/13, F.F. No. 6. The WCJ also credited the opinions in the reports submitted by Treating Physician, noting his long-time treatment of Claimant.

Further, the WCJ credited Supervisor's testimony. He did not credit the testimony of Employer's Physician. Specifically, he found "EVEN THOUGH EMPLOYER RECOGNIZED THAT CLAIMANT HAD REPETITIVE TRAUMA IMPAIRMENT AS THE RESULT OF HER WORK ACTIVITIES[,]" Employer's Physician opined Claimant had no thumb injury related to her work. F.F. 10(c) (emphasis in original). Such an opinion was "worthless." Concl. of Law No. 2.

Ultimately, the WCJ denied Employer's Petitions. The WCJ concluded Employer did not meet its burden of proof as to termination because Employer's Physician did not recognize the accepted work-injury. As to suspension, the WCJ found Employer did not establish that a specific job was available within Claimant's restrictions. Employer appealed to the Board.

The Board affirmed. The Board agreed with the WCJ as to the incompetency of Employer's Physician's testimony. The Board reasoned that the admission of Treating Physician's reports was harmless error because Employer did not meet its burden of proof.

Employer filed a petition for review to this Court.

## II. Discussion

On appeal,[3] Employer argues the Board erred in upholding the WCJ's determination that Employer's Physician's testimony was incompetent evidence. Employer emphasizes the WCJ erred in relying on Treating Physician's reports as they were inadmissible hearsay to which it objected. Employer also asserts the admission of the reports constituted reversible error, not harmless error as the Board determined. Based on these alleged errors, Employer asks this Court to reverse the Board, or to remand to the WCJ to decide the Petitions on a proper record.

### A. Competence of Employer's Physician's Opinion

First, we address Employer's contention that the WCJ erred in rejecting Employer's Physician's opinions as incompetent. Employer argues its medical evidence is competent and is sufficient to satisfy the burden of proof on its Petitions.

An "employer bears the burden of proof in a termination proceeding to establish that the work injury has ceased," or that any existing injury is not the result of the work-related injury. Udvari v. Workmen's Comp. Appeal Bd. (USAir, Inc.), 705 A.2d 1290, 1293 (Pa. 1997). An employer meets its burden in a suspension proceeding when it "establishes that a claimant has recovered all of … her earning power." Trimmer v. Workers' Comp. Appeal Bd. (Monaghan Twp.), 728 A.2d 438, 440 (Pa. Cmwlth. 1999).

---

[3] Our review is limited to determining whether an error of law was committed, whether necessary findings of fact were supported by substantial evidence, and whether constitutional rights were violated. Dep't of Transp. v. Workers' Comp. Appeal Bd. (Clippinger), 38 A.3d 1037 (Pa. Cmwlth. 2011).

6

Medical testimony is considered unequivocal and competent if the medical expert, after establishing a proper foundation, testifies within his professional opinion that a certain fact or condition exists. Campbell v. Workers' Comp. Appeal Bd. (Pittsburgh Post–Gazette), 954 A.2d 726 (Pa. Cmwlth. 2008). A medical expert's testimony "will be found to be equivocal if it is based only upon possibilities, is vague, and leaves doubt." Kurtz v. Workers' Comp. Appeal Bd. (Waynesburg Coll.), 794 A.2d 443, 449 (Pa. Cmwlth. 2002). Also, a medical expert's testimony must be considered in its entirety, such that a decision does not rest on a few words taken out of context. Lewis v. Workmen's Comp. Appeal Bd. (Pittsburgh Bd. of Educ.), 498 A.2d 800 (Pa. 1985).

For a termination petition, an employer's medical expert must establish that a claimant recovered from all injuries previously found to be work-related. Cent. Park Lodge v. Workmen's Comp. Appeal Bd. (Robinson), 718 A.2d 368 (Pa. Cmwlth. 1998). To do so, an employer's medical expert must recognize the accepted injury, and opine as to a claimant's recovery from it. GA & FC Wagman, Inc. v. Workers' Comp. Appeal Bd. (Aucker), 785 A.2d 1087 (Pa. Cmwlth. 2001).

"[I]t is well settled that where an expert's opinion is based on an assumption which is contrary to the established facts of record, that opinion is worthless." Williams v. Workers' Comp. Appeal Bd. (Hahnemann Univ. Hosp.), 834 A.2d 679, 684 (Pa. Cmwlth. 2003). A medical expert's failure to acknowledge an accepted injury in his opinion renders his opinion insufficient as a matter of law. Cent. Park Lodge.

7

From our careful review of his testimony, Employer's Physician did not accept the work-related injury. In fact, he repeatedly opined that Claimant's thumb strains were not work-related and declined to submit an affidavit of recovery for that reason. R.R. at 222a, 225a, 289a. Both the NCPs and the Agreement clearly accept "thumb strains" from repetitive tasks of Claimant's job were the recognized work injury. Id. at 1a, 4a, 36a. Because Employer's Physician refused to accept thumb strains as a work injury, his testimony that Claimant would be fully recovered from that injury is "worthless." Williams, 834 A.2d at 684.

Employer analogizes this case to To v. Workers' Compensation Appeal Board (Insaco, Inc.), 819 A.2d 1222 (Pa. Cmwlth. 2003). There, we held a medical expert need not believe a claimant suffered a work injury to offer competent testimony as to full recovery. To, however, arose from dissimilar facts.

There, the claimant appealed a grant of a termination petition based on the alleged incompetence of a medical expert's opinions. The claimant argued the expert's disbelief that a work injury occurred was grounds for reversal. This Court disagreed, explaining the expert did not testify that claimant never had a work injury. Rather, he was attempting to reconcile the claimant's explanation of how the injury occurred with his physical examination. The medical expert also testified there was "no evidence of medical impairment" upon physical examination, and thus no reason for ongoing medical care. Id. at 1225. Importantly, we rejected the claimant's position, noting the expert "did not testify that [the] [c]laimant never had a work injury." Id. at 1225.

8

Here, by contrast, Employer's Physician repeatedly emphasized that Claimant did not suffer a work injury. R.R. at 222a, 225a. He insisted throughout his deposition that Claimant's current complaints and pain were the result of arthritis. Id. at 234a, 240a. He thus questioned the causality of a work injury that should have been presumed. Cent. Park Lodge. Further, unlike the employer's expert in To, Employer's Physician did not testify that Claimant suffered from no medical impairment at all. Rather, he recognized she suffered from a medical impairment, which he diagnosed as arthritis. R.R. at 235a. He also acknowledged Claimant continued to experience pain and weakness. R.R. at 250a.

In evaluating whether an employer's medical expert's opinion is sufficient as a whole to terminate benefits, we hold that "[a]t a bare minimum, the expert must know what the accepted work-related injury was to be competent to testify that a claimant has fully recovered from a work-related injury." Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.), 936 A.2d 1195, 1200 (Pa. Cmwlth. 2007). Viewed as a whole, Employer's Physician's did not recognize Claimant's impairment as thumb strains. In these circumstances, his statement that if he assumed she had strains, "she's recovered," R.R. at 233a, is not sufficient.

Employer's Physician conceded Claimant would have restrictions, but he attributed them to "her CMC arthroplasties … an arthritic condition and not work related." Id. We do not review an expert's statements in isolation, but against the backdrop of his entire testimony. Lewis. Because he did not accept the work-injury, Employer's Physician's opinions were incompetent. GA & FC Wagman.

9

Regardless of its competency, Employer's Physician's testimony was incapable of sustaining Employer's burden because the WCJ did not credit his opinions as more fully discussed below.

## B. Credibility

Employer further contends the WCJ erred in crediting the opinion of Treating Physician over that of Employer's Physician. Employer argues the WCJ would not have discredited Employer's Physician's opinion but for his reliance on Treating Physician's reports, which were improperly admitted. We disagree.

It is solely for the WCJ as fact-finder to assess credibility and resolve evidentiary conflicts. Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison), 819 A.2d 164 (Pa. Cmwlth. 2003). As such, the WCJ may reject the testimony of any witness, in whole or in part. Id. This principle applies equally to testimony of medical experts. Griffiths v. Workers' Comp. Appeal Bd. (Red Lobster), 760 A.2d 72 (Pa. Cmwlth. 2000).

Here, the WCJ discredited Employer's Physician's testimony in its entirety. Specifically, the WCJ explained, "there was no way with intellectual honesty to credit [Employer's Physician's] opinion…." Concl. of Law 5. The WCJ also concluded, "Employer essentially litigated the termination petition as if it was defending a claim petition, with no recognized injury. [Employer's Physician's] opinions that all of [C]laimant's work injuries were actually non-work related are not credible, and therefore not a basis for prevailing in a termination petition." Concl. of Law No. 3.

10

The WCJ did not discredit Employer's Physician's opinions because they conflicted with those expressed in Treating Physician's reports. He made no such comparison. Rather, he explained that he found Employer's Physician's testimony as to Claimant's alleged full recovery "not believable." WCJ Op. at 1 n.1. The WCJ rejected Employer's Physician's testimony because it repeatedly questioned the causality of Claimant's condition that Employer recognized in two NCPs. Concl. of Law Nos. 3, 5.

The WCJ is permitted to reject Employer's Physician's testimony as a whole. Griffiths. This Court does not reweigh issues of credibility on appeal. Waldameer Park. Because the WCJ did not credit Employer's Physician's opinions, Employer had no credited evidence to support its burden of proof on its Petitions.

### C. Inadmissible Evidence

Lastly, Employer argues the Board erred in determining the WCJ committed harmless error when he admitted and relied on Treating Physician's reports.[4] Employer asserts the WCJ's admission of such hearsay evidence constitutes reversible error that, at a minimum, warrants a remand to the WCJ to decide the case without the benefit of such evidence. Again, we disagree.

---

[4] Employer also argues that by crediting Treating Physician's opinion, the WCJ expanded the work injury to include arthritis. That is unsupported by the WCJ's decision that recognized the injury as thumb strains. Concl. of Law No. 2. Further, the WCJ rejected Employer's Physician's opinions because he failed to recognize thumb strains as the work injury.

11

Under Section 422 of the Workers Compensation Act (Act),[5] 77 P.S. §835, a medical report may be admitted provided the matter involves 52 weeks or less of compensation benefits. However, when a claim involves more than 52 weeks of benefits, a report is only admissible if the party against whom the report is offered does not object. Id.

There is no dispute that this case involves more than 52 weeks of benefits. Further, Employer objected to Treating Physician's reports as hearsay. R.R. at 431a. Consequently, Treating Physician's reports were not admissible under Section 422. Weaver v. Workers' Comp. Appeal Bd. (State of the Art, Inc.), 808 A.2d 604 (Pa. Cmwlth. 2002). Further, the reports constitute hearsay uncorroborated by medical testimony. Therefore, the WCJ erred in admitting them.

Nevertheless, we agree with the Board that the WCJ's error was harmless. "To constitute reversible error, a ruling on evidence must be … harmful to the party complaining." Hart v. W.H. Stewart, Inc., 564 A.2d 1250, 1252 (Pa. 1989). An evidentiary ruling is harmless when it does not affect the result. Id.

Significantly, "[i]n a termination proceeding … a claimant has *no burden to prove anything* and, having already established the right to benefits, the benefits must remain in effect unless *the employer* proves that a termination of the claimant's benefits is warranted." Cent. Park Lodge, 718 A.2d at 370 (italics in original). Similarly, an employer bears the burden of proof in a suspension proceeding. Trimmer.

---

[5] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§1-1041.4, 2501-2708.

12

Here, Employer bore the burden of proving a change in condition or a full recovery. The WCJ rejected Employer's Physician's opinions. Lacking any credited evidence to support its Petitions, Employer did not meet its burden of proof. The admission of Treating Physician's contrary medical report did not alter the result. Accordingly, we agree with the Board that the error was harmless. Benson v. Workmen's Comp. Appeal Bd. (Haverford State Hosp.), 668 A.2d 244 (Pa. Cmwlth. 1995).

### III. Conclusion

For the foregoing reasons, we affirm the Board.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Allegheny,                       :
                Petitioner        :
                                :
           v.                       :     No. 570 C.D. 2015
                                :
Workers' Compensation Appeal                :
Board (Murphy),                            :
                Respondent        :

## **O R D E R**

**AND NOW**, this 4th day of February, 2016, the order of the Workers'
Compensation Appeal Board is **AFFIRMED**.

 

 

                                        _____
                                        ROBERT SIMPSON, Judge